# JOINER *et al.* v. ARDMORE LOAN & TRUST CO.

No. 1940.   Opinion Filed June 25, 1912.

(124 Pac. 1073.)

1.  **CORPORATIONS—Actions—Pleading.**   An answer setting up a plea in bar to an action on a promissory note, which alleges, in substance, that plaintiff was a corporation incorporated under the laws in force in the Indian Territory prior to statehood, and was doing business at the time of the admission of Oklahoma into the union, and so continued to do business to the time of the filing of the action, and that it had not complied with the Constitution and laws of the state of Oklahoma in reference to corporations doing business in the said state at the time the transaction in suit took place nor at the time of the filing of the action thereon, is not effective as a plea in bar to such action on transactions had by the said corporation, under the provisions of section 43, article 9, par. 260, Williams' Ann. Const. Okla., and a demurrer to such plea is properly sustained.

2.  **COVENANTS—Construction—Title to Realty.**   A covenant in a deed holding lands described therein to the grantee, his heirs, and assigns in fee simple forever, and an agreement that grantor is lawfully seised in fee of the premises, is an assurance to the purchaser that the vendor has the very estate in quality and quantity which it purports to convey.   Such a covenant imports an indefeasible estate and exacts a perfect title, which is not limited by a special warranty, unless the language of the deed taken all together clearly shows that it was the intent of the parties to give a special and limited warranty of title, as, except in such cases, a special warranty in a deed does not have the effect of controlling a precedent general covenant.

3.  **SAME—Breach—Warranty of Title.**   Where a grantor under general covenants of title sells and conveys land to a grantee of which it has no title, breach of the covenant occurs when made and notes given for the purchase price are without consideration, and where defended against on this ground, are unenforceable. Nor is this rule affected by the fact that both parties knew of the lack of title.

4.  **VENDOR AND PURCHASER—Remedies of Purchaser—Recovery of Money Paid.**   Where on a trial of an action to recover unpaid purchase money for lands conveyed under deed of general warranty, the title to which has wholly failed, the obligors plead such failure of consideration and tender a reconveyance, they are entitled to recover in such action any portion of the consideration paid, under the doctrine that money may be recovered by the owner from another wherever in equity and good conscience the latter has no right to retain it.

(Syllabus by the Court.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by the Ardmore Loan & Trust Company against C. M.
Joiner and another. Judgment for plaintiff, and defendants bring
error. Reversed and remanded.

*W. D. Gibbs,* for plaintiffs in error.

*Potter & Potter,* for defendant in error.

DUNN, J. This case presents error from the district court
of Carter county. The defendant in error as plaintiff begun its
action to recover from plaintiffs in error on certain promissory
notes given as part of the purchase price for certain lands de-
scribed in a deed dated May 20, 1908, upon which a lien was
retained as security for the payment thereof. To this petition
defendants in their amended answer admitted the execution of the
notes sued on for the purposes and consideration set forth in
plaintiff's petition, but they denied any indebtedness to plaintiff
for the reason that the lands purchased as described in plain-
tiff's petition were what were known as the one-fourth of the
surplus, supposed to be alienable after issuance of patent in one
year from the date thereof, of the following named persons. Here
follow the names of a number of parties of whom it is averred
that they were citizens of the Choctaw and Chickasaw Nations
of the full blood, and that at the time of the purchase of the
land and the execution of the notes the defendants paid to the
plaintiff the sum of $2,250, and that thereafter the Congress of
the United States authorized the bringing of suits for the can-
cellation of all deeds or transfers of allotments or portions of al-
lotments of members of the Choctaw and Chickasaw Nations
made contrary to law; that, in pursuance thereof, suits were
brought in the United States District Court for the Eastern Dis-
trict of Oklahoma to cancel the said deeds of the said allottees
to plaintiff and from the plaintiff to the defendants, alleging that
said conveyances were illegal and void. It was further averred
that defendants purchased the said lands relying upon the cove-
nants, representations, and agreement of the plaintiff that it was

lawfully seised in fee of said lands, and that the same were free from all liens and incumbrances, and that it had a good right to convey the same, except as set forth in the conveyances thereof, when in truth and in fact the plaintiff was not seised in fee and had no title to convey, the title to said lands having wholly failed, to the damage of defendants in the sum of $2,250, the same being the amount heretofore paid to the plaintiff on the purchase price of said lands. Defendants further answered that the Ardmore Loan & Trust Company is a corporation incorporated under the laws in force in the Indian Territory prior to statehood, and was doing business at the time of the admission of Oklahoma into the union, at Ardmore, Okla., and so continued to do business down to the time of filing this action; that as such corporation it had not complied with the Constitution and laws of the state of Oklahoma in reference to corporations doing business in said state at the time the transaction took place, nor at the time of the filing of suit thereon, and is not entitled to maintain such action. For prayer defendants prayed that plaintiff take nothing by its action, and that they recover of and from it the sum of $2,250, with interest thereon at the rate of 6 per cent. from January 6, 1909, and for cancellation of the notes sued on. The defendants at the same time tendered a reconveyance of the lands to the plaintiff. To this answer plaintiff filed a general demurrer, which was by the court sustained and judgment rendered, from which action defendants have prosecuted an appeal to this court on petition in error with transcript of the record.

Considering first the question of the right of plaintiff to maintain its action, defendants call attention to section 43 of article 9, par. 260, Williams' Ann. Const. Okla., which provides:

"No corporation, foreign or domestic, shall be permitted to do business in this state without first filing in the office of the Corporation Commission a list of its stockholders, officers, and directors, with the residence and post office address of, and the amount of stock held by each."

The question here raised was presented to this court in the case of *Cooper v. Ft. Smith & W. R. Co.*, 23 Okla. 139, 99 Pac. 785, and on it, it was said:

"An answer setting up a plea in bar to a suit on a promissory note given in aid of the construction of plaintiff's line of railroad which alleges, in substance, that at the time it was executed plaintiff was and still is a foreign corporation, and as such has failed to comply with Wilson's Rev. & Ann. St. 1903, secs. 1225 and 1227, is bad, as it was not the intent of the Legislature, by inhibiting such corporation from doing business in the state, to deprive it of the right to sue in its courts or to render void contracts made by it in the state, and a demurrer thereto was properly sustained."

Therefore that plaintiff had a right to maintain its suit was properly sustained by the judgment of the trial court.

The other questions raised by the defendants' answer presented in the brief of counsel are not so free from difficulty. The defendants pleaded that they purchased the lands, relying on the covenants, representations, and agreements of plaintiff that it was lawfully seised in fee of the lands, and that it had a good right to convey the same. The particular section of the deed in which these covenants are contained reads as follows:

"To have and to hold the above-described premises unto the said C. M. Joiner, his heirs and assigns in fee simple forever. And the said Ardmore Loan & Trust Company does for itself, its successors and assigns, covenant and agree with the said C. M. Joiner, his heirs and assigns, that it is lawfully seised in fee of the afore granted premises, that the same is free and clear of all liens and incumbrances, except deferred payments, which is assumed by the grantees, that it has a good right to sell and convey the same unto the said C. M. Joiner, his heirs and assigns, and that it will forever warrant and defend the same unto the said C. M. Joiner, his heirs, executors, administrators and assigns against the lawful claims of any and all persons whomsoever, lawfully claiming or to claim the same or any part thereof, by, through or under it, a vendor's lien is hereby retained on said property to secure the deferred payments as set out above."

The foregoing covenant and agreement that plaintiff was lawfully seised in fee of the premises, and that the same were free and clear of all liens and incumbrances, and that it had a good right to sell and convey the same, except as to the deferred payments mentioned, is a covenant for title. Maupin on Marketable Title to Real Estate (2d Ed.) sec, 108. Therein is stated the rule

generally prevailing in the United States "that a covenant that the grantor is 'lawfully seised' is the same as if he had covenanted that he was rightfully seised of an indefeasible estate in fee simple, and is to be treated as 'an assurance to the purchaser that the grantor has the very estate in quantity and quality which he purports to convey.'" See, also, Devlin on Deeds (3d Ed.) sec. 885, and the authorities therein noted. The rule which generally prevails in the United States under such a covenant is stated by the Supreme Court of Tennessee in the case of *Kincaid v. Brittain,* 5 Sneed (Tenn.) 119, as follows:

"A covenant of seisin in a deed for land is an assurance to the purchaser that the vendor has the very estate in quality and quantity which he purports to convey. It imports a seisin in law, and exacts a perfect title; and is not fulfilled by a transfer to the purchaser of an actual seisin."

Section 19, Act Cong. April 26, 1906, c. 1876, 34 St. at L. part. 1, pp. 137, 144, provided in part as follows:

"That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek or Seminole Tribes shall have power to alienate, sell, dispose of, or incumber in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this act, unless such restriction shall, prior to the expiration of said period, be removed by act of Congress. *  *  *"

The restrictions had not at the time of these conveyances been removed, and hence it must follow, under this act, that the deed was void and plaintiff had no title which it could convey, and none which could inure to the benefit of its grantee. This fact was not only known to the plaintiff at the time, but was equally known to the defendants, and the question arises whether the defendants with this knowledge could avail themselves of the failure of title in the plaintiff, and plead that their contract was without consideration because of this fact. An investigation of the authorities convinces us that they could. The rule seems to be that:

"The right of recovery for a breach of a covenant of seisin is not affected by the fact that it was known to one or both of the parties at the time the covenant was made that the grantor had no title to the land or any part of it. Bailey, P. J., in the

case cited (*Wadhams v. Innes,* 4 Ill. App. 642, 646), quoted with approval the language of the Supreme Court of that state in a former case (*Beach v. Miller,* 51 Ill. 211, 2 Am. Rep. 290): 'Where a person insists upon and obtains covenants for title, he has the right, when obtained, to rely upon them and enforce their performance, or recover damages for their breach. The vendor is under no compulsion to make covenants when he sells land, but, having done so, he must keep them or respond in damages for injury sustained by their breach. Nor is it a release or discharge of the covenant to say that both parties knew it was not true, or that it would not be performed when it was made. A person may warrant an article to be sound when both buyer and seller know that it is unsound; so the seller may warrant the quantity or quality of an article he sells when both parties know that it is not of the quality or does not contain the quantity warranted. In fact, the reason the purchaser insists upon covenants for title, or a warranty of quality or quantity, is because he either knows or fears that the title is not good, or that the article lacks in quantity or quality.'" (Devlin on Real Estate [3d Ed.] sec. 897.)

See, also, Rawle on Covenants for Title (5th Ed.) sec. 88; Maupin on Marketable Title to Real Estate, p. 335; *Batterton et al. v. Smith,* 3 Kan. App. 419, 43 Pac. 275; *Bolinger et al. v. Brake,* 4 Kan. App. 180, 45 Pac. 950; *Yancey v. Tatlock et al.,* 93 Iowa, 386, 61 N. W. 997; *Evans v. Taylor,* 177 Pa. 286, 35 Atl. 635, 69 L. R. A. 790.

But it is insisted on the part of counsel for plaintiff that its general covenant of title to the defendants was limited in its scope by that portion of the deed which read that it would warrant and defend the same unto the said grantee "against the lawful claims of any and all persons whomsoever, lawfully claiming or to claim the same or any part thereof, by, through or under it," and that, under this special warranty, its grantee was entitled to recover as against it only by showing that the failure of title of which he complained was due to some act, deed, or conveyance of which it was responsible. The effect of a special warranty contained in a deed following general covenants of title has been a source of much vexation to the courts. The rule for the construction of all contracts when there are conflicting provisions therein, so as to render the terms thereof ambiguous, is to ascertain as far as possible, from the language of the contract, the in-

tent of the parties. Paragraph 788, Wilson's Rev. & Ann. St. 1903, provides for the purpose of ascertaining the intention of parties to a contract that the rules given in this chapter (chapter 15, Wilson's Rev. & Ann. Statutes) are to be applied. Paragraph 790, *Id.,* provides:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this title."

Paragraph 792, *Id.,* provides:

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

Paragraph 794, *Id.,* provides:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties."

Paragraph 800, *Id.,* provides:

"If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."

Paragraph 801, *Id.,* provides:

"Particular clauses of a contract are subordinate to its general intent."

Paragraph 803, *Id.,* provides:

"Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause, subordinate to the general intent and purposes of the whole contract."

Paragraph 804, *Id.,* provides:

"Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected."

Paragraph 805, *Id.,* provides:

"In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, except in a contract between a public officer or body as such, and a private party, in which it

is presumed that all uncertainty was caused by the private party."

From the foregoing provisions of the statute it is to be observed that the purpose of all interpretations is to secure and arrive at the actual agreement into which the parties entered, to ascertain the real intent in their minds at the time they dealt, and that this intent, when it is ascertained, shall be by the court given effect, but that, when ambiguity or uncertainty exists in the terms of any promise, the intention is to be interpreted in the sense in which the promisor believed that the promisee understood it, and that any uncertainty not removed by these considerations must be interpreted most strongly against the party who caused the uncertainty to exist, and that the promisor, except in cases of public officials, is presumed to be such party. In other words, therefore, in the construction of the contract here before us, the grantor is presumed to be the party who caused the uncertainty to exist. The foregoing statutes relate generally to the interpretation of contracts, but the rule therein laid down, conceding that uncertainty or repugnancy exists in this deed, requires us to construe the terms of this instrument against the promisor rather than in its favor.

This rule is by the courts generally applied to conflicting or inconsistent covenants in deeds, and to this end it is generally held as stated in the syllabus of the leading case of *Bender v. Fromberger,* 4 Dall. 436, 1 L. Ed. 898, that "a special warranty in a deed has not the effect of controlling a precedent general covenant." In this case it appears that the defendant and his wife had sold and conveyed a tract of land, and in their deed had "covenanted that the defendant was lawfully seised of a good, sure and indefeasible estate of inheritance, in fee simple, in the said land, and had good right, full power, and authority, in his own right, to grant and convey the same to the plaintiff in fee. The deed also contained a special warranty against the grantor and his heirs, and all persons claiming under them." On an action in which it was assigned as a breach that the defendant was not seised nor had he a good right to convey the land in fee to the plaintiff, the court in considering the contentions of the defendant said:

"The defendant contends that his intention was to give no more than a special warranty, because the clause of special warranty is inconsistent with, and contradictory to, a general warranty. Now, in this, I cannot agree with him. It is certain that the special warranty, and more, is included in the general one. It is an inaccurate mode of conveyancing; but there is no absurdity or contradiction in making one covenant against yourself and your heirs, and another against all mankind. The special warranty was unnecessary, and is to be attributed to the ignorance of the scrivener, who, probably, thought it was a matter of course, without intending, to affect the more general preceding covenant, or, perhaps, he might think it necessary to guard against the effect of the words 'grant, bargain, and sell,' used in the first part of the deed, because the estate was subject to a ground rent, as appears from the general covenant, in which it is said that the estate is free from all incumbrances except the said ground rent. It has been urged that it is all one covenant, because the special warranty is connected with the preceding general covenant by the words 'and that.' It is very common to connect a covenant of warranty and a covenant for further assurance by these expressions. But what I rely on is the intent of the parties, manifested in the deed considered altogether. I do not conceive it is possible for a man of common sense to declare that he engages that he had a perfect estate in fee simple and had a good right to convey such perfect estate, without intending to warrant to a greater extent than against himself and his heir. These are no technical expressions, but such as every man understands, which is not the case with a special warranty. To a common man it is not very intelligible that there should ever be occasion to warrant and defend against himself, and all persons claiming under him; for it is very natural to suppose that, when a man has used words sufficient to convey his estate to a third person, he has necessarily done enough to bar himself and all persons claiming under him without calling in the aid of a special warranty. In short, the insertion of the clause of special warranty is generally the act of scriveners; but I presume that no scrivener could be so stupid as to insert a covenant that 'the grantor was seised of an indefeasible estate in fee,' unless he had been told by the parties that a general warranty was intended. I am therefore of opinion that the special warranty in this deed has not the effect of controlling the precedent general covenant, and that judgment should be entered for the plaintiff."

The foregoing discussion in our judgment is entirely applicable to the deed which is here before us. The general covenant of title and of the right to convey embraced all that the special warranty contained and more. The special warranty herein was without effect to operate upon the title which the grantor had conveyed. To give to this special warranty the force contended for by counsel for grantor would be to allow plaintiff to take from defendants, not only the money which it had already received, but to recover the amount sued for herein, and that, too, without any consideration whatsoever. Such a construction would require on the part of the court the rendition of a judgment in plaintiff's favor, and exact from the defendants the money prayed for upon the mere empty covenant contained in the deed. The defendants were not contracting for a promise. They were dealing with plaintiff in order to secure title to land, and, when it develops that plaintiff is wholly without title and that defendants secure absolutely nothing, no court, prompted by considerations of justice, will enforce such a demand. A somewhat similar case is that of *Rice v. Goddard,* 14 Pick. (Mass.) 293, the syllabus therein reads as follows:

"In an action on a promissory note given for the purchase money of land conveyed by deed with covenants of seisin and warranty, the action being between the original parties, it is competent for the defendant to prove by way of defense a total failure of title to the land."

In the discussion of this case the Supreme Judicial Court of Massachusetts said:

"The note was given in consideration of the conveyance of land by deed with the usual covenants of seisin and warranty. The title to the land failed entirely; and the question is whether that want of title is an entire want of consideration for the note, so as to render it *nudum pactum,* or whether the covenants were of themselves a sufficient consideration to support the promise. It was decided by the court in Maine in *Lloyd v. Jewell,* 1 Greenl. 360, that the covenants were a sufficient consideration. The decisions of that court are entitled to great respect. The opinion, however, in the case cited was grounded on what was considered to be the settled law of Massachusetts; but, though there have been *dictums (Fowler v. Shearer,* 7 Mass. 19; *Phelps v. Decker,*

10 Mass. 279), there has been no decision in this state to that effect, and so the foundation of the opinion fails. The same subject has been before the courts of other states, and the decisions have uniformly been that a total failure of title is a total failure of the consideration. *Frisbee v. Hoffnagle,* 11 Johns. [N. Y.] 50; *McAllister v. Reab,* 4 Wend. [N. Y.] 483; *Steinhauer v. Witman,* 1 Serg. & R. [Pa.] 447; *Gray v. Handkinson,* 1 Bay [S. C.] 278; *Bell v. Huggins,* 1 Bay [S. C.] 327; *Chandler v. Marsh,* 3 Vt. 162; *Tillotson v. Grapes,* 4 N. H. 448. The promise is not made for a promise, but for the land, the moving cause is the estate, and, if that fails to pass, the promise is a mere *nudum pactum."*

Defendants tendered a reconveyance and demanded judgment for the amount which they had paid, and the same considerations which demand at our hands a denial of the right of plaintiff to a judgment, it seems to us, should grant to the defendants the right to recover. On the question of possession on failure of title, and the breach of the covenant, see *Faller v. Davis et ux.,* 30 Okla. 56, 118 Pac. 382; *Fitzhugh v. Croghan,* 2 J. J. Marsh. (Ky.) 429, 19 Am. Dec. 139. Plaintiff has accepted from defendants a sum of money for which it gave nothing. It went through the form of conveying a title to certain lands which it did not own, and to which it could give no right. It admits having received from defendants the sum of money pleaded in the answer, which in our judgment it has no right to retain, for the simple reason that it has never given anything for it. In such a case an action will lie to recover, for whenever one has the money of another which he in equity and good conscience has no right to retain, it may be recovered. *Allsman et al. v. Oklahoma City,* 21 Okla. 142, 95 Pac. 468, 16 L. R. A. (N. S.) 511, 17 Ann. Cas. 184.

The judgment of the trial court on the demurrer is accordingly reversed, and the cause is remanded to take such further proceedings not inconsistent with this opinion as the facts developed on a trial may show to be just and equitable.

TURNER, C. J., and WILLIAMS and KANE, JJ., concur; HAYES, J., absent, and not participating.