## Waggener v. Howsley's Administrator.

(Decided April 14, 1915.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Contracts—Parol Contracts—Statute of Frauds.—A parol contract to pay $10.00 per month from the time of the making of such contract, so long as a person shall live, is not within the statute of frauds, and is enforcible.

2. Deeds—Warranty.—A covenant of general warranty in a deed is, in substance, equivalent to the several special covenants under the common law, but the vendee of land can not maintain an action upon the covenant of warranty of title in the deed, until he has been evicted, or his title adjudged inferior in a suit at law between him and the superior title holder.

W. W. DAVIES for appellant.

O'NEAL & O'NEAL and JOHN O. ARNOLD for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

On November 27th, 1891, Mrs. L. A. Howsley was the owner of a farm in Hardin County, Kentucky. She inherited one-half of this farm from her father, and the other one-half she had purchased from her sister. The price to be paid for the portion purchased by her from her sister was about $2,280.00, but she had paid no part of the purchase price, except $500.00, which she had borrowed from a bank, and to secure the loan had executed a mortgage upon the farm, and this sum yet remained unpaid. For the remainder of the purchase price she had executed notes, due and payable at different dates. She had, also, become the surety of her daughter, Mrs. Neff, for about $300.00, and owed store accounts and other debts to the amount of about $800.00. Her son, S. L. Waggener, the appellant here, and who was her son by a former marriage, had from time to time furnished his mother with different sums of money, in all amounting to about $800.00, and for which he held her notes. Her husband, who was the stepfather of S. L. Waggener, was an old and decrepit man. To rid herself of this financial embarrassment, she entered into an arrangement with her sons, S. L. Waggener and W. C. Waggener, by which she and her husband conveyed to them, on the 27th day of November, 1891, the farm upon

which she lived, in consideration of they agreeing to
pay off the indebtedness upon the farm, and her other
debts, and to pay her $75.00 a year for each year she
should live thereafter.   She had a daughter at that time
unmarried, whose name was Minnie, and who was a
daughter by her then husband, and in this arrangement,
S. L. Waggener executed his note to his half-sister, Min-
nie, for $333.00, which was to bear no interest, and to
be due at the mother's death.   Mrs. Howsley, and her
husband, and daughter, Minnie, lived with the appellant
upon the farm, and he took care of them and furnished
them entirely, and paid to Mrs. Howsley the $75.00 per
year specified in the deed, which she had made to her
two sons for the farm, until during the year 1906, when
she, upon the margin of the record book where the deed
was recorded, executed a release to her sons of the
further payment of the $75.00 per year.   She claimed
that this was done in consideration of the two sons
promising to furnish her a house in which to live as
long as she lived, the rental value, of which, should be
$10.00 per month, but S. L. Waggener claims that the
reason for the release was to enable her husband to
secure an increase of his pension from eight dollars to
twelve dollars per month.   Thereafter, in the year 1901,
W. C. Waggener, in consideration of the payment to him
by S. L. Waggener of $500.00, and the assumption by
S. L. Waggener of the indebtedness, which they had
agreed to pay, and any indebtedness which they had con-
tracted, conveyed his interest in the farm to S. L. Wag-
gener.   There was incorporated in this deed, among
other considerations, the provision that S. L. Waggener
was to provide a house for his mother to live in as long
as she lived.   Since 1891, the appellant, S. L. Waggener,
had paid all the debts which his mother owed, and which
he had assumed, and, also, cancelled the notes for
$800.00, which his mother owed to him, and had provided
his mother and stepfather with a home and a living
up to the year 1901.   About that time, at his mother's
request, and in performance of the contract in the deed
from his brother to himself, he bought a lot in West
Point, Kentucky, and erected a nice cottage and neces-
sary out-buildings at a cost of $1,700.00 or $1,800.00, which
he furnished to his mother and his sister, Minnie, who
had before that time married a man named Lambert, in
which to live.   He paid the taxes and insurance upon

the house and grounds, and his mother and sister, Mrs. Lambert, resided there for about two years. Mrs. Lambert's husband being engaged in work at Louisville, she concluded to move to the city of Louisville, and Mrs. Howsley sent for appellant, and informed him of the fact that Minnie was preparing to move away, and that she could not live there by herself, when, according to her contention, and that of her daughter, Minnie, she expressed the purpose to retain control of the house in West Point, and to let it to rent, and that appellant agreed, that if she would give him possession of the house, that he would pay her board at the rate of $10.00 per month, at any place she desired to stay, and that she accepted this proposition. The appellant, however, says that he did not make any such agreement, but when informed that Minnie was preparing to move to Louisville, that he then invited his mother to come and live with him; and said to her, that he had at that time sold his home and was boarding, but was endeavoring to buy him a home, and as soon as he should do so, that his mother would come and live with him, when Minnie proposed, that in as much as he was going to pay his mother's board at Elizabethtown, until he secured another home for himself, to let the mother remain with her until he could secure a home, and to pay to her the $10.00 a month for her board during the time.

The appellant claims that in the month of April following, he acquired a nice home at Glendale, and wrote to his mother to that effect, and requested her to come and live with him, but that she refused to do so, saying that she preferred to live with Minnie, and that he could continue to pay her the $10.00 per month, which he thereafter refused to do. The mother instituted this suit in the Jefferson Circuit Court to recover of the appellant the sum of $300.00, and the further sum of $10.00 per month, from the 4th day of August, 1906, during her natural life. The appellant answered, and plead that he had furnished his mother the home at West Point, and insisted upon her remaining there, and when she refused to do so, he then offered her a home at his own house, which she refused to accept, without any good cause, and he had in this way fully complied with all of the obligations due her, and he further plead by way of set-off or counter-claim, that after purchasing the farm from his mother and his brother, he learned that an in-

dividual living in Arkansas was the owner of a one-sixth interest in the land, and, also, the owner of a one-sixth interest in another body of land adjoining it, and that in order to make his title secure, he had purchased from this person the one-sixth interest in the farm he received from his mother, and in the same transaction acquired the one-sixth interest which this individual owned in the lands adjoining, and for which he paid the sum of $625.00, and that his mother, upon her warranty, was obligated to pay him the sum of $208.00 in reimbursement of the sums paid out by him to perfect his title.

After the proof in the case had been taken by way of depositions, the case was submitted for trial, when the court rendered a judgment in favor of appellee against the appellant, for the sum of $75.00 per year, from March 1st, 1905, to December 19th, 1912, the date of the death of Mrs. Howsley, which amounted to the total sum of $584.37. The court, also, adjudged that the appellant recover against the appellee upon his set-off, the sum of $208.33, leaving a balance in favor of the appellee of the sum of $376.04, and, also, that appellee recover of the appellant all the costs which had accrued in the case. The appellant, from the judgment against him, appeals to this court, and the appellee, from the judgment against him, has taken a cross-appeal to this court.

The court below in rendering judgment for appellee, seems to have decided that the administrator of Mrs. Howsley should make a recovery of something that is not sought in the pleadings, nor sued for. There is no pretense in the pleadings that the plaintiff below sought to recover the $75.00 per year, which was provided for in the deed executed by Mrs. Howsley and her husband to her two sons, S. L. and W. C. Waggener. She alleges in her pleadings that she had released them of that obligation, and does not claim that the release was either without consideration, or procured by fraud, nor does she allege any reason for the avoidance of the effect of the release. It is needless to say that a judgment cannot be rendered upon an issue which is not made in the pleadings. The contention of the appellee is that the release was the consideration upon which Mrs. Howsley bases her suit for a recovery of the sum of $10.00 per month, on account of a house which she claims that appellant promised to provide her.

The demurrer of appellant to the petition was properly overruled, because, although, the contract relied upon was a verbal one, and as events transpired, was not performed within a year, from the alleged time of its making, but it was a contract which might have been performed within a year from the time of its making by reason of the death of Mrs. Howsley, before the termination of one year, and is a contract which is not within the statute of frauds.   Stowers v. Hollis, 83 Ky., 544; Howard v. Burgen, 4 Dana, 137; King's Exor. v. Hannah, 9 B. M., 369; Fain v. Turner's Admr., 96 Ky., 634; Myer v. Kirk, 21 R., 163; Davis v. Brown, 17 R., 1429; Dant v. Head, 90 Ky., 255; Berry v. Graddy's Admr., 1 Met., 553; Myles v. Myles, 6 Bush, 237; Dickey v. Dickinson, 105 Ky., 748.

The appellant denies the making of this contract. Only two witnesses testify directly as to whether or not this contract was made, and they are the appellant and his mother.   The brother, W. C. Waggener, who must certainly have known, if such a contract was made, was not introduced as a witness by either party.   The fact that Mrs. Howsley and her husband continued to live with appellant for five years thereafter, and until after the making of the deed by W. C. Waggener to appellant, in which one of the considerations was, that appellant should provide his mother a house to live in as long as she lived, inclines us to the belief that the contract relied upon by Mrs. Howsley was a contract between W. C. Waggener and the appellant at the time of the making of the deed in 1901, and was not made at the time that the release of the $75.00 per year, provided for in the deed from Mrs. Howsley to her sons, was executed. Mrs. Minnie Lambert testifies that the contract to pay $10.00 per month was made at the time, or after Mrs. Howsley moved away from West Point.   Putting all the evidence together, we are led to the belief that the contract was as stated in the deed from W. C. Waggener to appellant, and was, that appellant was to furnish his mother a house to live in as long as she lived.   The only question remaining to be determined, is whether the proof shows, that appellant failed to perform this contract, in order to justify the judgment against him.   All agree that appellant did build and furnish a house in every way sufficient and suitable for his mother to live in at West Point.   That this house was a good home,

there is no doubt. Furthermore, the appellant, Mrs.
Howsley, and Mrs. Lambert, all, agree that when Mrs.
Lambert and her mother were proposing to move to the
city of Louisville, that instead of appellant making any
effort to procure her removal from this house, he ad-
vised his mother and sister to remain and live at the
house, and insisted upon their doing so. Unless Mrs.
Howsley had some good reason for abandoning this
house provided by her son for her, at an outlay of
money, which the amount of his property hardly seems
to have justified, it seems that he had fully performed his
contract. The fact that the daughter was preparing to
move away from the house, and to leave her mother
there alone, was a reason why her mother could not
longer reside there. The appellant testifies that, he at
that time, invited his mother to come and make her home
at his house, where she had lived from 1891 until 1901.
This is not denied. It is admitted, too, by Mrs. Howsley
and Mrs. Lambert, that at the first of the following
April, when appellant had bought him another home, and
arranged and furnished a suitable room in it for his
mother to live in, that he wrote to her and informed
her of that fact, and requested her to come and live with
him, and the mother admits that on numerous occasions,
that the appellant insisted on her making her home
with him. There does not seem to be any dispute as to
these facts. The contract in the deed from W. C. Wag-
gener to appellant only provides that appellant should
furnish his mother a house to live in, and does not pro-
vide that it shall be one of her selection. It is true that
the mother and the daughter, Minnie, stated that when
they were preparing to leave the house at West Point,
that appellant agreed that he would pay $10.00 a month
for her board, and that she might reside wherever she
desired. No recovery is sought in the pleadings upon
this alleged promise, and besides, it is denied by appel-
lant, and the fact that he sent his mother $10.00 a
month to pay to the sister her board for the two months
following, and then requested the mother, as quick as
he had bought him another home, to come and live with
him; and the further fact that the record shows that
the appellant was a most dutiful, generous, and loyal
son to his mother, and that he had been carrying the
burdens for all the family from his early youth, con-
strains us to the belief that his version of the agree-

ment made when his mother was preparing to leave the West Point house, is the true version of the transaction, and if such is the fact, it seems that appellant did all which his contract required him to do, and that he could not do any more towards its performance than he did do. The mother gives no reason why she could not live happily and contented in the house of her son. The fact that the mother received a pension from the United States Government, and the further fact, that about the time that appellant acquired his new home, and requested her to come and live with him, that she had inherited from her brother about $2,700.00 in money, probably had something to do with her refusal to allow him to provide her a house to live in at his own home. The mother was old and greatly attached to her daughter, but this does not justify the laying of an unjust burden upon a kind and most generous son. Taking all the facts and circumstances shown by the evidence in the record, we are of the opinion that the court below erred in adjudging that the administrator of his mother should recover of the appellant any sum whatsoever.

There remains yet to be considered the cross-appeal of appellee, from the judgment, by which appellant recovered against his mother's administrator $208.33, upon his set-off and counter-claim. The facts show that Mrs. Howsley and her husband conveyed the farm to appellant by a deed containing a clause of general warranty, and put him into the possession of the property. He accepted the deed, and there is nothing to indicate that he was procured to accept it on account of any fraud or covin practiced upon him by the mother; neither is any charge of such kind made. While still in undisturbed possession of the property he learned that a person residing in Arkansas was the owner of a one-sixth undivided remainder interest in the lands which had formerly constituted the Hayden Yates farm, of which the farm conveyed to him by his mother, was a part. He was never evicted from the lands and no attempt was made to evict him, and he was not ousted of the possession by the owner of a superior title to any part of it, neither was he disturbed in his enjoyment or possession or use of the property. He went to Arkansas and purchased the title held by the individual named, in the entire Hayden Yates farm, at a cost of $500.00, paid for the one-sixth remainder interest in the land, and $125.00 expended in

expenses. He admits that he was reimbursed for this expenditure by his aunt, who had conveyed to his mother one-third of the Hayden Yates farm, to the extent of $380.00, and that the owner in possession of the portion of the Hayden Yates farm, which was not embraced in the deed from his mother to him, reimbursed him to the extent of $500.00. These two sums were considerably more than his outlay in the matter. Besides, he seems to only have plead his claim as a set-off to the amounts for which he was sued, and very generously stated in his testimony, that if his mother should pay him the $208.33, for which he recovered judgment on the set off, that he would immediately refund it to her.

While it has been held that a covenant of general warranty in a deed to land is equivalent, in substance, to the several special covenants under the common law, one of which was, that the grantor is seized of the land sold; another, that the land is free from incumbrances; another that the grantee shall quietly enjoy possession; another that the grantor will warrant and defend the title; and another that the grantor has a good and perfect right to convey, the vendee of land cannot maintain an action upon the covenant of warranty of title in the deed, unless he has been evicted, or his title adjudged inferior in a suit at law, between him and the superior title holder. In the case at bar, the grantor was seized of the land sold. It was free from incumbrances, except as appellant knew of, and the appellant was quietly enjoying the possession. The only breach of the covenant of general warranty in the deed, relied upon or alleged, was the defect of title stated above, and no breach on that account could arise until in a suit at law the appellant's title was adjudged to be inferior to the title of the claimant of the one-sixth remainder interest. Huff v. Cumberland Valley Land Co., 17 R., 213; Smith v. Jones, et al., 97 Ky., 670.

For the foregoing reasons, the judgment appealed from is reversed, upon both the original and cross-appeals, and this cause is remanded to the court below, with directions to set aside the judgment appealed from, and to dismiss the petition, and the set-off and counterclaim.