Berthold OWEN et al., Appellants,

v.

Sam Boyd NEELY and Sig Johnson et al., Appellees.

Court of Appeals of Kentucky.

Oct. 15, 1971.

Benjamin J. Lookofsky, Lookofsky & Miller, Mayfield, for appellants.

George R. Effinger, Paducah, William P. Swain, Andrew J. Russell, Boehl Stopher Graves & Deindoerfer, Louisville, for appellees.

PALMORE, Judge.

The appellants, Berthold Owen and wife, brought this action against Sam Boyd Neely, an attorney, for damages allegedly resulting from a defective certificate of title. The trial court dismissed their claim by summary judgment based on the pleadings and discovery depositions. It is our opinion that these particular documents indicate the existence of a material issue of fact which can be properly resolved only when the facts are fully developed or, at least, further developed.

The complaint states essential allegations to the following effect:

(1) In August of 1968, the plaintiffs contracted to buy a house and lot from Hubert Johnson and wife and employed Mr. Neely to examine the title. The property was described as follows (we shall hereinafter call this the "record description"):

"Being a certain parcel of land containing approximately 1 acre coming off of the Northwest corner of a certain thirty acre parcel of land in the Northeast corner of the Northwest Quarter of Section 15 T 2 R 1 W, which thirty acres was conveyed to Sig Johnson by Rafe B. Wallace, Master Commissioner, by deed dated June 25, 1934, of record in Deed Book 106, page 320, Graves County Court Clerk's Office.

"The parcel of land conveyed by this deed is more particularly described as beginning at a point where the northern side of the Wingo-Baltimore Road crosses the North line of the Northwest Quarter of Section 15 T 2 R 1 W; thence East along the North line of said Quarter and along a fence a distance of 17 poles, more or less, to a post oak; thence in a southern direction a distance of 14 poles, more or less, to a small post oak on the northern side of said Wingo-Baltimore Road; thence in a Northwest direction along said Wingo-Baltimore Road a distance of 17 poles, more or less, to the point of beginning.

"There is excepted from the above described real estate a strip of land off of the southern portion thereof which was conveyed to the Commonwealth of Kentucky, for road purposes, by Thomas Lindsey and wife, Barbara Lindsey, by deed dated February 1, 1966."

(2) In due course Mr. Neely gave plaintiffs his report certifying a clear and merchantable title in which the property was thus described (we shall refer to this as the "survey description"):

"The following described real estate lying in District #3, Graves County, Kentucky, viz:

"Being 1.06 acre of land in the northwest quarter of section 15 T R 1 W de-

scribed as beginning at an iron state [sic] on the north line of the Wingo-Baltimore Road on the north line of the said quarter at a distance of 72½ poles East from the northwest corner of the quarter, and running thence North 74½ degrees East 21¾ poles (360 feet) along the north line of the quarter to a 15-inch post oak tree; thence South 11 degrees West 16¾ poles (277 feet) to an iron stake on the north line of the Wingo-Baltimore Road; thence North 58 degrees West 21¾ poles (360 feet) along the north line of the road to the point of beginning.

"Being the same real estate conveyed to Hubert Johnson and wife, Billie June Johnson, by deed from Thomas Lindsey and wife, Barbara Lindsey, dated February 14, 1966, recorded February 14, 1966, in Deed Book 198, page 606, Graves County Court Clerk's Office."

(3) The description contained in the certificate of title (the survey description) is erroneous in that it covers more area than the sellers owned, and the house plaintiffs thought they were buying is not on the property they bought but is on property belonging to one Sig Johnson, a fact which Mr. Neely could have discovered by the exercise of due care.

(4) In reliance on the certificate of title plaintiffs paid $7,500 for the property, thereafter improved it to the extent of $2,034, and have sustained various other damages, for all of which they seek recovery of some $30,000.

Sig Johnson and wife were named as parties defendant for the purpose of binding them by the court's judgment with respect to the boundary line.

Among his defenses Mr. Neely pleaded that the accuracy of the survey from which the description in his title report was taken was not a matter concerning which he made any certification, that in fact his certificate was made expressly "subject to any information that would be revealed by an accurate survey of the real estate and subject to any information that would be revealed by a personal inspection of the premises," that the description was based on a survey made by John T. Ligon at the request of the plaintiffs, and that if it was inaccurate they are estopped.

Mr. Neely asserted a cross-claim against Sig Johnson and wife asking that the correct boundary line be adjudicated.

From the evidence elicited through discovery depositions, this is about what happened:

In the course of their search for a home to buy the Owens came into contact with a real estate agent named Holloway, who went with them to see the Hubert Johnson place. Johnson was not at home, but Mrs. Johnson pointed out the boundaries, particularly a corner oak. Upon deciding to buy the property Owen told Holloway he wanted a survey and a lawyer to examine the title. Holloway recommended John T. Ligon for the survey and Mr. Neely as a good lawyer. Acting for the Owens, Holloway arranged for Ligon to make the survey, and the Owens themselves asked Mr. Neely to do the title work. After the sale transaction was completed and Owen had begun to make repairs and improvements Sig Johnson came over and told him that part of the house was on his land and that he had theretofore advised Holloway to the same effect. After several inconclusive discussions with Hubert Johnson, Mr. Neely, and Holloway, and more encounters with Sig Johnson, Owen sought counsel and had another survey made by Leonard Griggs, a civil engineer.

According to the record description, the property in question lies in the form of an isosceles triangle, the base of which is 14 poles in length (being the east boundary, Sig Johnson's line) and the two legs 17 poles long (the north leg coinciding with a section line and the south leg with the right-of-way of a highway). Instead of relying exclusively on the record description, Ligon permitted Mrs. Hubert Johnson

to show him a post oak corner tree in the section line which he accepted and used to begin his survey. Thus laid out, the Ligon survey shows the base of the triangle as 17 poles and the legs as approximately 22 poles.

In preparing the deed from Hubert Johnson and wife to the Owens, Mr. Neely used the survey description furnished to him by Ligon. Ligon admits that if he had surveyed strictly according to the record description at least a part of the house would have been outside the Hubert Johnson boundary. According to the Griggs survey the entire house lies within the Sig Johnson property. Mr. Neely says he noticed "some discrepancy in one or two calls" as between the record description and the survey description but relied on Ligon's work, particularly in that the acreages and natural boundaries called for in the two descriptions were substantially identical. (Actually, although the record description calls for approximately one acre, the surveyors agreed that the correct acreage would be .68 or .70 acre.)

One of the arguments made in support of the judgment is that the action is premature unless and until it is determined that the Owens title is in fact defective. Without pursuing the subject further, we think that would be an unduly technical position, especially when the plaintiff admits his title is bad. Why should he litigate with Sig Johnson if he thinks Johnson is right? Whether or not Sig Johnson is made or remains a party, the Owens say they do not own the property described in the title certificate and in their deed, and they have the burden of proving it as an essential element of recovery against Mr. Neely.

The difficult question is whether the facts thus far developed show conclusively that Mr. Neely is protected by the reservation contained in his title certificate.

We are of the opinion that a lawyer certainly may protect himself by reservations and disclaimers expressly set forth in a certificate of title, but only if he has no reasonable grounds to suspect the actual existence of defects not mentioned. The average layman is not familiar with and ordinarily does not understand legal descriptions, and if his lawyer, accidentally or otherwise, receives information that should reasonably put him on notice of a defect we think it is his duty to investigate or report it to his client.

Whether Mr. Neely, upon discovering the discrepancies between the deed description and the survey description, in the exercise of that degree of care owed a client by his attorney should have pursued an inquiry or reported the circumstances to the Owens is a factual question we think cannot be resolved in his favor as a matter of law by summary judgment.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.

NEIKIRK and OSBORNE, JJ., not sitting.