**John SEIGLE and Darlene Seigle, Appellants,**

v.

**James R. JASPER, Verneasa Jasper, Mildred Tennill and Robert M. Coots, Appellees.**

**No. 92–CA–003078–MR.**

Court of Appeals of Kentucky.

Nov. 5, 1993.

Virginia Collins Burbank, W. Reneaux Collins, Burbank & Collins, Louisville, for appellants.

Robert Coots, Taylorsville, for appellee, Robert Coots.

Joseph J. Wantland, Shepherdsville, for appellees, Thomas R. Jasper, Verneasa Jasper, Mildred Tennill.

Before DYCHE, JOHNSON and STUMBO, JJ.

JOHNSON, Judge:

This is an appeal by John Seigle and Darlene Seigle (Seigles) from two separate summary judgments dismissing two separate lawsuits that had been consolidated by the trial court. We affirm the trial court's summary judgment in favor of appellees, Thomas R. Jasper, Verneasa Jasper and Mildred Tennill (Jaspers–Tennills) on Seigles' claim of breach of warranty in the deed. We reverse the trial court's summary judgment in favor of appellee, Robert M. Coots (Coots), on Seigles' claim of negligence in the preparation of a title opinion by attorney Coots and remand for further proceedings.

On May 1, 1974, John Seigle and Carol Seigle, husband and wife, entered into a contract for deed with Thomas R. Jasper and Verneasa Jasper, husband and wife, and Floyd Tennill and Mildred Tennill, husband and wife, for the purchase of real estate known as Lot No. 8 of the Ridgeview Subdivision located in Spencer County, Kentucky. Carol Seigle has died, and John Seigle is now married to Darlene Seigle. Floyd Tennill has also died.[1] In 1979 the Seigles desired to purchase Lot No. 13 in the same subdivision and from the same parties. The Seigles applied for a loan from The Peoples Bank of Mount Washington (Peoples Bank) for the purpose of purchasing Lot No. 13 and paying the balance owing under the contract for deed on Lot No. 8. Robert M. Coots was a duly licensed practicing attorney in Spencer County who regularly performed real estate title searches and loan document preparation for Peoples Bank on real estate loans on property located in Spencer County. The Seigles agreed that Coots would perform the title examination for their loan, and paid his attorney's fees as a part of their closing costs paid through Peoples Bank at the time their real estate loan was closed. The Seigles obtained two separate general warranty deeds from Jaspers–Tennills on Lot Nos. 8 and 13, on May 31, 1979, and June 11, 1979, respectively. During 1984 Seigles borrowed additional money from Peoples Bank which required refinancing of the loan. Coots wrote a second title letter to Peoples Bank dated July 9, 1984, for Lot Nos. 8 and 13 for which the Seigles paid his attorney's fees through the closing costs they paid to Peoples Bank. The deposition testimony from two officers of Peoples Bank revealed that bank policy resulted in the 1979 loan documents, including any title opinion letter from Coots, being destroyed when the loan was paid off as a result of the 1984 refinancing. Coots denies preparing the 1979 title report, but John Seigle, in an affidavit filed in opposition to Coots' motion for summary judgment, states that he and an officer of Peoples Bank, Barry Armstrong, reviewed the loan documents, and that Armstrong told him "that Mr. Coots had run the title and that everything was clear." It is agreed by the parties that the Seigles were never informed by Coots that each lot was encumbered by the existence of an easement to Ashland Oil, Inc. (Ashland Oil) for an underground pipeline which had been duly recorded in the Spencer County Court Clerk's Office.

---

1. For the purposes of this Opinion, John Seigle, Carol Seigle and Darlene Seigle will be referred to as the Seigles and Thomas R. Jasper and Verneasa Jasper and Floyd Tennill and Mildred Tennill will be referred to as Jaspers–Tennills regardless of the time period and marital status of the parties.

The Seigles received a letter by certified mail from Ashland Oil dated August 30, 1988 that advised them that the placing of a mobile home on Lot No. 8 and a small building on Lot No. 13 within Ashland Oil's right-of-way and upon Ashland Oil's pipeline represented an encroachment of Ashland Oil's right-of-way. On August 25, 1989, the Seigles filed two separate lawsuits. The Seigles sued Jaspers–Tennills for fraud and breach of warranty, and Coots for negligence. The two lawsuits were later consolidated; and after the taking of depositions and the filing of various motions and memoranda, all claims were dismissed by summary judgment. This appeal followed.

■ As to the summary judgment in favor of Jaspers–Tennills, the Seigles do not appeal the dismissal of their fraud claim due to the running of the statute of limitations. Their appeal as to Jaspers–Tennills is solely on the dismissal of their claim for breach of warranty. The Seigles make a thorough argument involving the law concerning covenants of general warranty, much of which we accept. However, the fact still remains that the deed at issue included an exceptions clause that excepted from the general warranty the very easement that is at issue, and for that reason we affirm.

Both of the deeds from Jaspers–Tennills contained a standard general warranty clause that read: "The first parties hereby sell and convey with covenant of general warranty . . ." After the property was described, each deed also contained the following exceptions clause:

> The first parties further covenant they are lawfully seized of the estate herein conveyed with the full right and power to convey same in fee simple and there are no encumbrances against same except easements and restrictions of record and Zoning Regulations of Spencer County.

The Seigles argue that the above exceptions clause does not except the Ashland Oil easement from the covenant of general warranty; but instead, the deed creates in addition to the covenant of general warranty other special or independent covenants. The Seigles contend that the general rule is that a subsequent limited covenant will not restrict a preceding general covenant, citing the Oklahoma Supreme Court case, *Joiner v. Ardmore Loan & Trust Co.*, 33 Okl. 266, 124 P. 1073 (1912). This is only part of the general rule. *Joiner* also recognizes that if the entire language of the deed taken as a whole clearly shows that it was the intent of the parties to limit the warranty, then the subsequent limited covenant will restrict the preceding general covenant. *Joiner, supra,* 124 P. at 1075–1076. While the language "further covenant they are lawfully seized of the estate herein conveyed with the full right and power to convey same in fee simple" may be redundant since these covenants are a part of a covenant of general warranty, we do not believe that it creates an ambiguity. The deed still clearly excepts from the covenant of general warranty encumbrances consisting of "easements and restrictions of record and Zoning Regulations of Spencer County."

The Seigles next argue that even if the exceptions are applicable to the covenant of general warranty that "their applicability would be limited to the covenant against encumbrances." This argument is based on the generally accepted principle that the covenant of "general warranty includes all common law covenants under section 493 of the Kentucky Statutes." (Section 493 is now KRS 382.030.) *Eli v. Trent*, 195 Ky. 26, 27, 241 S.W. 324 (1922), citing *Butt v. Riffe*, 78 Ky. 352 (1880); *Smith v. Jones*, 97 Ky. 670, 31 S.W. 475 (1895); *Waggener v. Howsley's Adm'r.*, 164 Ky. 113, 175 S.W. 4 (1915). In discussing the term "general warranty," the Court in *Smith, supra,* stated:

> This term used by the grantor in a deed that he conveys by or with "general warranty," has been often held by this court to be in substance equivalent to the several special covenants in use under the common law, as that one is seized of the land sold, that he has good and perfect right to convey, that the land is free from incumbrances, that the grantee shall quietly enjoy possession, and that the grantor will warrant and defend the title against all claims of all persons.

97 Ky. at 672, 31 S.W. 475.

■ The Seigles argue that the exceptions clause only applies to the encumbrance por-

tion of the covenant of general warranty, thereby leaving unqualified and breached the covenants of seizin, right to convey, quiet enjoyment and defense of title. We do not accept this argument because the limiting language used in the deed is just as applicable to all five covenants of a general warranty as it is to the encumbrance covenant. It is well settled that an easement is an encumbrance. 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* § 90 (1965), states:

That group of rights or interests in land, comprehended under the broad term "easements," is within the purview of the term "encumbrances" as used in covenants against encumbrances in deeds, since an outstanding easement, such as a right of way across the premises, used and enjoyed, is such a claim or right as interferes with the possession of the proprietor, affects the estate both in quantity and value, and therefore falls within the terms and spirit of the covenant against encumbrances. (footnotes omitted).

By stating "there are no encumbrances against same except easements ...", the deed limits all five covenants of the general warranty for the described real estate. The use of the word "encumbrances" in the exceptions clause does not restrict the applicability of the exceptions clause to the encumbrance covenant alone. Rather, it is providing the grantees with actual and specific notice that the general warranty the grantors are giving is less than complete—that there is an encumbrance, the easement, against the property.

It has been held that a clause in a deed excepting easements from the covenants is sufficient to except from a conveyance burial privileges in a cemetery that were only an easement and not a fee simple interest. *Haas v. Gahlinger*, Ky., 248 S.W.2d 349, 351 (1952). The purpose of the grantors in including the exceptions clause is to give the grantees actual notice of the easement. In *Poole v. Young*, Ky., 459 S.W.2d 162 (1970), the Court of Appeals reversed the trial court and allowed a lawsuit for damages for alleged breach of the covenant of general warranty to proceed because the deed contained a standard covenant of general warranty but

no language excepting therefrom an easement for a neighbor's septic tank drain field that was of record. However, in the instant case, since the Ashland Oil easement was of record and since the deed provided for this exception, it was the responsibility of the Seigles to have a proper search of the records performed in order to learn the details of the "easements and restrictions of record." We affirm the trial court's summary judgment in favor of Jaspers–Tennills.

This takes us to the Seigles' claim in negligence against Coots for failing to properly advise them of the existence of the Ashland Oil easement. The order of the Spencer Circuit Court sustaining Coots' motion for summary judgment does not provide any insight into the legal reasoning underlying it. Further, the record before us appears to be incomplete in that Coots' motion to dismiss with memorandum in support, answer and motion for summary judgment with memorandum referred to in the Seigles' memorandum in support of their motion for partial summary judgment are not in the record. Therefore, we will address the issues of the case as we discern them from the record.

Kentucky Rules of Civil Procedure (CR) 56.03 provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there in no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991), stated:

While it has been recognized that summary judgment is designed to expedite the disposition of cases and avoid unnecessary trials when no genuine issues of material fact are raised, *see, Dossett v. New York Mining and Manufacturing Co.*, Ky., 451 S.W.2d 843 (1970), this Court has also repeatedly admonished that the rule is to be cautiously applied. *See, Rowland v. Miller's Adm'r*, Ky., 307 S.W.2d 3 (1956). The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. *Dossett v. New*

*York Mining and Manufacturing Co., supra; Rowland v. Miller's Adm'r, supra.* Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact. *Puckett v. Elsner,* Ky., 303 S.W.2d 250 (1957). The trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. It clearly is not the purpose of the summary judgment rule, as we have often declared, to cut litigants off from their right of trial if they have issues to try. *See Bonded Elevator, Inc. v. First National Bank of Louisville,* Ky., 680 S.W.2d 124 (1983); *Hill v. Fiscal Court of Warren County,* Ky., 429 S.W.2d 419 (1968); *Williams v. Ehman,* Ky., 394 S.W.2d 905 (1965); *Rowland v. Miller's Adm'r, supra.*
*Id.* at 480.

\*        \*        \*        \*        \*        \*

[T]he movant should not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy. *See Isaacs v. Cox,* Ky., 431 S.W.2d 494 (1968). Only when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor should the motion for summary judgment be granted. *See Harker v. Federal Land Bank of Louisville,* Ky., 679 S.W.2d 226 (1984); *Green v. Bourbon County Joint Planning Commission,* Ky., 637 S.W.2d 626 (1982); *Robert Simmons Constr. Co. v. Powers Regulator Co.,* Ky., 390 S.W.2d 901 (1965).
*Id.* at 482.

\*        \*        \*        \*        \*        \*

We adhere to the principle that summary judgment is to be cautiously applied and should not be used as a substitute for trial. As declared in *Paintsville Hospital [Company v. Rose,* Ky., 683 S.W.2d 255 (1985)] it should only be used "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." It is vital that we not sever litigants from their right of trial, if they do in fact have valid issues to try,

just for the sake of efficiency and expediency. Accordingly, we readopt the mandate announced in *Paintsville Hospital* as the proper standard for summary judgment in this state as well as applying it to the facts of this case.

*Id.* at 483.

■ The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. *Goldsmith v. Allied Building Components, Inc.,* Ky., 833 S.W.2d 378 (1992).

There is evidence in the record supporting the Seigles' claim of negligence. In viewing the evidence in the light most favorable to the Seigles, the evidence supports the following: (1) Peoples Bank required a title examination in order to close the Seigles' loan; (2) Peoples Bank regularly used Coots for title examinations of Spencer County real estate; (3) the Seigles agreed to the use of Coots for the title examination with the understanding that they would pay his attorney's fees through the loan closing costs paid to Peoples Bank, which they did; (4) Coots wrote a title letter to Peoples Bank dated July 9, 1984 which referenced the Seigles by name and included several exceptions, some of which were easements, but did not make any reference to the Ashland Oil easement; (5) John Seigle was advised by an officer of Peoples Bank that Coots had performed the title search in 1979 also, and that "everything was clear;" (6) the Seigles acted reasonably in relying upon the representations made by Coots in his title reports; (7) the Seigles would not have purchased the property had they been made aware of the restrictions placed on the property by the Ashland Oil easement; (8) the Seigles have suffered damages in that their property with the Ashland Oil easement is worth less than it would be without the easement; and (9) Coots failed to exercise ordinary care in preparing the title opinion whereby he breached his duty to the Seigles to properly advise them of the existence of the Ashland Oil easement.

Coots has contended throughout these proceedings that he has no liability to the Seigles because there was a lack of privity of contract. Apparently, there are no published Kentucky cases concerning an attorney's liability to parties who allegedly did not have privity of contract with the title abstractor. *See* William B. Johnson, Annotation, *Negligence in Preparing Abstract of Title as Ground of Liability to One Other than Person Ordering Abstract,* 50 A.L.R.4th 314 (1986). As stated above, the facts viewed in the light most favorable to the Seigles present an issue of fact as to whether or not a contractual relationship existed between Coots and the Seigles, to wit: the Seigles agreed that Coots would perform their title examination; Coots performed the work at the request of Peoples Bank knowing the work was being done to benefit the Seigles in closing their loan; and the Seigles paid Coots' attorney's fees.

The Seigles have sued Coots for negligence. One issue before the trial court was whether or not Coots' duty to exercise ordinary care in the performance of the title examination extended to the Seigles. We hold that it did.

In *First American Title Insurance Co. v. First Title Service Co.,* 457 So.2d 467 (1984), 50 A.L.R.4th 301, the Florida Supreme Court held that where a title insurance company had issued title insurance in reliance on a title abstract prepared for the seller of the property, and the title abstractor failed to note the existence of a recorded judgment against a former owner of the property, since the abstractor prepared the abstract knowing, or under conditions in which he should reasonably have expected that the seller would provide the abstract to the title insurance company for the purpose of inducing the title insurance company to rely on the abstract as evidence of title, the abstractor's contractual duty to perform the service skillfully and diligently ran to the benefit of the title insurance company. We accept the holding in *First American Title* that the Court summarized as follows:

> Where the abstracter knows, or should know, that his customer wants the abstract for the use of a prospective purchaser, and

the prospect purchases the land relying on the abstract, the abstracter's duty of care runs, as we have said, not only to his customer but to the purchaser. Moreover, others involved in the transaction through their relationship to the purchaser—such as lender-mortgagees, tenants and title insurers—will also be protected where the purchaser's reliance was known or should have been known to the abstracter. But a party into whose hands the abstract falls in connection with a subsequent transaction is not among those to whom the abstracter owes a duty of care.

457 So.2d at 473.

This holding is consistent with the Restatement (Second) of Torts, § 552, *Information Negligently Supplied for the Guidance of Others,* which states in pertinent part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Again, in viewing the facts most favorably to the Seigles, Coots was acting in the course of his profession for his pecuniary interest when he failed to exercise reasonable care or competence in obtaining or communicating information and supplied false information for the guidance of Peoples Bank, Jaspers–Tennills and the Seigles in their business

transactions that has subjected the Seigles to a pecuniary loss as a result of their justifiable reliance upon the information.

■ It is well established that "[t]he concept of liability for negligence expresses a universal duty owed by all to all." *Gas Service Co., Inc. v. City of London*, Ky., 687 S.W.2d 144, 148 (1985). "The rule is that every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Grayson Fraternal Order of Eagles v. Claywell*, Ky., 736 S.W.2d 328, 332 (1987). "In any negligence case, it is necessary to show that the defendant failed to discharge a legal duty or conform his conduct to the standard required. W. Prosser, *Law of Torts* § 30 (1971)." *Mitchell v. Hadl*, Ky., 816 S.W.2d 183, 185 (1991). In *Hill v. Willmott*, Ky. App., 561 S.W.2d 331 (1978), this Court in discussing an attorney's duty to a third party accepted language from *Donald v. Garry*, 19 Cal.App.3d 769, 97 Cal.Rptr. 191 (1971), and stated:

> "An attorney may be liable for damage caused by his negligence to a person *intended to be benefited* by his performance irrespective of any lack of privity ..." (Emphasis added). We believe this to be a proper statement of the law in this Commonwealth.

561 S.W.2d at 334.

"In determining whether that degree of care and skill exercised by the attorney in a given case meets the requirements of the standard care ..., the attorney's act, or failure to act, is judged by the degree of its departure from the quality of professional conduct customarily provided by members of the legal profession. Prosser, *Law of Torts*, § 32 at 161–166 (4th ed. 1971). As it would be in negligence cases generally, the question of whether the conduct of the attorney meets the standard of care test is one for the trier of the facts to determine." *Daugherty v. Runner*, Ky.App., 581 S.W.2d 12, 16 (1978).

■ Coots' other defenses of estoppel and statute of limitations can be dispensed with in short order. The fact that the deed from Jaspers–Tennills to the Seigles contained an exception for "easements or re-strictions of record" in no way eliminates Coots' duty to include the Ashland Oil easement in his title letter since the whole purpose of having Coots perform a title examination was to specifically advise the parties of any restrictions on the title. It is the duty of the attorney conducting the title search to communicate to the parties any information that might reasonably constitute a defect and restriction on the title. *See Owen v. Neely*, Ky., 471 S.W.2d 705 (1971). Coots' estoppel argument based on two exceptions contained in the title letter also fails. The letter excepted "*[u]nrecorded* easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments which an accurate and complete survey would disclose." (emphasis added). Since the Ashland Oil easement was recorded, this exception clearly does not cover it. The letter also excepted "[r]ights or claims of parties other than (appellants) in actual possession of any or all of the real property." The Texas Supreme Court in *Shaver v. National Title & Abstract Co.*, 361 S.W.2d 867 (Tex.1962), a case that also involved a pipeline, stated:

> All the authorities agree that possession, in order to constitute notice, must be actual possession of the party ... consisting of acts of occupancy which are open, visible and unequivocal, and in nature sufficient upon the observation of a subsequent purchaser to put him on inquiry as to the rights of the possessor ...

361 S.W.2d at 869.

Ashland Oil's acts of occupancy were not sufficiently open, visible and unequivocal to put the Seigles on inquiry as to Ashland Oil's rights.

■ Coots argues that since the purchase agreement between the Seigles and the Jaspers–Tennills for Lot No. 8 dated January 29, 1974 contained the words "with pipeline" that the Seigles had notice of the pipeline and are estopped from claiming otherwise. The genuineness of these words is strongly disputed by the Seigles and is an issue of fact for the jury.

■ Coots argues that the one-year statute of limitations ran prior to the filing of this action in 1989 since the most recent title

letter was in 1984. The Seigles allege that they were not aware of the pipeline until they received Ashland Oil's letter in 1988. We follow the widely accepted rule and hold that the statute of limitations did not begin to run until the defect became known to the Seigles. *See Pruett v. Mississippi Valley Title Insurance Co.,* 271 So.2d 920 (1973); *Shaver, supra.*

We reverse the summary judgment in favor of Coots and remand for further proceedings consistent with this Opinion. We affirm the summary judgment in favor of Jaspers–Tennills.

STUMBO, J., concurs.

DYCHE, J., concurs in part; dissents in part.

DYCHE, J., concurring in part and dissenting in part.

I concur in the result reached by the majority as it applies to the claim against the Jaspers and Ms. Tennill. I must dissent in part, however, as to the majority's holding as it applies to the attorney involved herein. *Hill v. Willmott,* Ky.App., 561 S.W.2d 331 (1978), imposes a duty toward the purchasers upon an attorney in a situation such as this; the attorney's responsibility, however, is limited to damages sustained on Lot 13 only, as appellants had already contracted to purchase Lot 8 prior to any involvement of the attorney.