Byrd E. DAUGHERTY, as Ancillary Administrator of the Estate of Lula Daugherty Roach, Deceased, Appellant,

v.

E. Michael RUNNER, Appellee.

E. Michael RUNNER, Cross-Appellant,

v.

Byrd E. DAUGHERTY, as Ancillary Administrator of the Estate of Lula Daugherty Roach, Deceased, Cross-Appellee.

Court of Appeals of Kentucky.

Nov. 3, 1978.

Rehearing Denied Feb. 16, 1979.

Discretionary Review Denied June 5, 1979.

Gary L. Gardner, Gary L. Gardner & Associates, Louisville, for appellant and cross-appellee.

William S. Bowman, Stiles & Miller, Louisville, for appellee and cross-appellant.

Before HAYES, HOGGE and HOWARD, JJ.

HAYES, Judge.

This appeal is from a judgment entered pursuant to a jury verdict which exonerated the appellee, an attorney, from the charges of legal malpractice. The charges of the legal malpractice claim arose from a medical malpractice cause of action on behalf of the deceased, Lula Daugherty Roach. This type of action is commonly referred to as a "suit within a suit." The basis for the legal

malpractice claim is that appellee Runner, while representing the deceased Roach for injuries sustained in an automobile accident, failed to pursue a medical malpractice claim by the estate of Roach against the hospital where Roach was treated for her injuries after her accident and against the doctors who treated her, until her claim was barred by the statute of limitations.

The jury found for Runner on the legal malpractice claim and additionally found that the appellant would have recovered on the medical malpractice case, if suit had been timely filed, in the amount of $146,-123.75. Both parties appealed.

The appellant contends that the trial court erred in submitting the issue of Runner's negligence to the jury and in failing to instruct the jury properly.

Appellee's cross-appeal is of a protective nature wherein it is contended that if we reverse the trial court based on appellant's assignments of error, then appellee believes the jury verdict awarding appellant $146,-123.75 on his medical malpractice claim is erroneous because of improperly admitted evidence.

We will not reach the claim of appellee on cross-appeal since we affirm the judgment of the lower court.

On February 22, 1972, Mrs. Roach and her husband Russell were involved in an automobile accident near Richmond, Kentucky. After receiving emergency medical treatment in Richmond, Mrs. Roach was transferred to St. Joseph Hospital in Lexington, Kentucky. She was admitted on February 22, 1972, under the care of an orthopedic doctor, George Gumbert, Jr. Mrs. Roach died in the hospital on March 17, 1972. The official cause of death listed on the certificate of death was bronchial pneumonia due to, or as a consequence of, generalized peretonitis and bacterial endocarditis. On the date of Mrs. Roach's death, her husband Russell, individually and as executor of the estate of Mrs. Roach, entered into a contract with attorney Runner

to the effect that Runner was to "institute a claim for damages against any and all responsible parties as a result of injuries received upon the 22nd day of February, 1972." The contract was a standard contract approved by the Louisville Bar Association.

A later contract, dated July 28, 1973, was entered into between James Russell Roach and another attorney, whereby this "second attorney" was to represent Roach, individually and as administrator of the estate of Lula Roach, in the medical malpractice claim. James Russell Roach was a nonresident, so the present appellant, Byrd E. Daugherty, was appointed ancillary administrator.

Suit was filed on August 1, 1973, in Fayette Circuit Court on behalf of Daugherty by his present attorney, against St. Joseph Hospital and others based on the medical malpractice claim. The trial court in that case granted a summary judgment against Daugherty and the estate of Lula Roach because the suit was not filed within the period of limitations prescribed by KRS 413.140. The trial court further relied upon the rule of law established in the case of *Hackworth v. Hart*, Ky., 474 S.W.2d 377 (1971).[1]

Runner testified he was not hired to represent the estate of Lula Roach on a medical malpractice claim; made an investigation of the facts surrounding the auto accident; filed suit on same in Federal Court for the Eastern District of Kentucky at Lexington against the driver of the other auto in the accident, and never suspected the possibility of a medical malpractice claim.

Appellant contends it is what Runner did not do that makes him liable for malpractice. It is asserted he did not examine the hospital records until after the statute of limitations had run on any medical malpractice claim, and that he never advised his client that he did not handle medical

---

1. While the trial court may have erroneously concluded that the statute of limitations ran on March 17, 1973, one year from the date of Mrs. Roach's death, that judgment was never appealed.

malpractice cases. There was also testimony on behalf of appellant that Russell Roach, who had died prior to the trial, had telephoned Runner in January, 1973, inquiring of Runner the status of any medical malpractice investigation Runner was conducting. Runner denied ever having such a conversation. It is uncontradicted, however, that appellant hired the "second attorney" on March 15, 1973, to represent him in the medical malpractice claim against St. Joseph Hospital and others.

The Fayette Circuit Court had determined that the statute of limitations began to run on the medical malpractice claim "on March 17, 1972, and certainly no later than July 20, 1972, when the record of the decedent's treatment was fully complete." From the evidence in the record and the legal briefs filed on behalf of the parties, it is unclear why the second attorney, who accepted a retainer fee, did not file the medical malpractice claim within the period of time permitted by the statute and case law of this Commonwealth.

The appellant contends that the trial court erred in (1) submitting the question of the attorney's negligence to the jury; (2) allowing an expert opinion to be presented to the jury based upon improper evidence; and, (3) in failing to instruct the jury that the fact that other hired counsel might have been able to toll the statute of limitations was no defense to appellee Runner.

Both parties indicate this is possibly a case of first impression in Kentucky. They refer us to but one Kentucky case, that of *Wimsatt v. Haydon Oil Co.,* Ky., 414 S.W.2d 908 (1967).

Our research reveals that the facts here presented make this case one of first impression; however, we do find the old case of *Humboldt Bldg. Ass'n. v. Ducker's Exr.,* 111 Ky. 759, 64 S.W: 671 (1901) to be helpful on the law to be applied to these facts.

In *Humboldt,* the defendant-attorney was employed by the plaintiff-foreign corporation to be its attorney in Kentucky for the purpose of examining and passing upon the validity of titles to real estate upon which the corporation was to make loans of money. The corporation made a loan to one Morrison and submitted the title to the attorney for his examination. He examined and approved it. He failed to advise the plaintiff-corporation of the existence of a materialman's lien. The end result was, in a foreclosure suit by the subcontractor to enforce his lien, that the plaintiff-corporation lost some $2,800.00, the property lacking that much in value to pay both the lien and the corporation's mortgage. The plaintiff-corporation then sued the defendant-attorney based upon the negligence of the attorney. The trial court sustained a demurrer to the complaint and the Court of Appeals reversed on appeal.

While recognizing the cases are distinguishable on the facts, the *Humboldt* case discusses the standard of care owed by the attorney to his client. The standard of care is perhaps the most fundamental factor in attorney malpractice litigation. The court stated, at page 763 of 111 Kentucky Reports and at pages 672, 673 of 64 S.W.:

. . . Many interesting cases have been cited by counsel, and examined with care. From them we feel authorized in stating that, while the rule in England seems to have been that an attorney is liable to his client only in case of gross neglect or gross incompetence, yet in this country a juster rule for the client, and one which the profession can not reasonably find fault with, is that the attorney is liable for the want of such skill, care, and diligence as men of the legal profession commonly possess and exercise in such matters of professional employment. *Bank v. Ward,* 100 U.S. 195–199, 25 L.Ed. 621. When one seeks and obtains admission to that profession dealing with so many important and involved affairs of men, and holds out his services to be engaged by those standing in need of such, he engages that he possesses to an ordinary extent the technical knowledge commonly possessed by those in the profession, and that he will give to the matters submitted to him such care and attention as is ordinarily given similar affairs by men of this profession. He does

not agree, in the absence of special contract to that effect, that he will make no mistake of judgment. On the contrary, the law recognizes, in fixing this liability of the attorney, that human judgment is fallible. Courts, as well as lawyers, do disagree concerning the many matters about which each one may have a fairly fixed opinion. The law is a science, it is true, but an imperfect one, for the reason that it depends for exemplification and enforcement upon the imperfect judgments and consciences of men. Therefore when the attorney has used ordinary care in acquainting himself with the facts, his misjudgment as to the law thereon will not generally render him liable. . . .

■■■ What is the level of service demanded from members of the legal profession? The relationship of attorney-client is a contractual one, either expressed or implied by the conduct of the parties. The relationship is generally that of principal and agent; however, the attorney is vested with powers superior to those of any ordinary agent because of the attorney's quasi-judicial status as an officer of the court; thus the attorney is responsible for the administration of justice in the public interest, a higher duty than any ordinary agent owes his principal. Since the relationship of attorney-client is one fiduciary in nature, the attorney has the duty to exercise in all his relationships with this client-principal the most scrupulous honor, good faith and fidelity to his client's interest.

As stated by the author in Wade, *The Attorney's Liability for Negligence,* 12 Vand.L.Rev. 755, 762 (1959), the standard of care is generally composed of two elements—care and skill. The first has to do with care and diligence which the attorney must exercise. The second is concerned with the minimum degree of skill and knowledge which the attorney must display.

■■■ In determining whether that degree of care and skill exercised by the attorney in a given case meets the requirements of the standard of care aforementioned, the attorney's act, or failure to act, is judged by the degree of its departure from the quality of professional conduct customarily provided by members of the legal profession. Prosser, *Law of Torts,* § 32 at 161–166 (4th ed. 1971).

■■■ As it would be in negligence cases generally, the question of whether the conduct of the attorney meets the standard of care test is one for the trier of the facts to determine. *Humboldt Bldg. Ass'n. v. Ducker's Exr., supra* ; *Hansen v. Wightman,* 14 Wash.App. 78, 538 P.2d 1238 (1975); and 45 A.L.R.2d 5.

In *Humboldt* the court, at page 764 of 111 Kentucky Reports and at page 673 of 64 S.W., put it plainly that "the existence or nonexistence of these actionable facts, as well as of those constituting the defense, are such as properly should be found by a jury under appropriate instructions, or by the trial court if a jury is not demanded."

Having determined that the standard of care an attorney owes his client is not that of a "reasonable man" under the circumstances, but is that care and skill as men of the legal profession commonly, or ordinarily, possess and exercise under the circumstances, and having determined that this is generally a question for the trier of the facts, we look now at the facts of the instant case.

The appellant Daugherty contends the trial court erred in submitting the negligence of appellee Runner to the jury. He in effect is saying he, Daugherty, was entitled to a directed verdict on this point because Runner was negligent as a matter of law.

■■■ Under the authority of the landmark decision of *Maryland Casualty Co. v. Price,* 231 F. 397 (4th Cir. 1916), appellant was required to prove in the legal malpractice suit (1) that Runner was employed by appellant; (2) that he neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) that such negligence resulted in and was the substantially contributing factor in the loss to the client.

The appellant has presented two theories in support of his argument that he was entitled to a directed verdict on the question of Runner's negligence. The first is that Runner was retained to bring all possible legal actions resulting from the injuries and death of Mrs. Roach, including a medical malpractice action, if appropriate, and that he failed to carry out this duty. This argument is clearly without merit. The written contract between the parties recited that Runner was retained "to institute a claim for damages against any and all responsible parties, as a result of injuries received upon the 22 day of February, 1972 . . . ." While there was some testimony about a conversation with Runner regarding a medical malpractice action, the evidence was disputed on that matter, and the question of whether Runner had any duty to handle any medical malpractice case was certainly one for the jury.

Appellant's second theory in support of his directed verdict argument seems to be that even if Runner was not employed specifically to pursue a medical malpractice action, that he nevertheless had a duty to obtain and examine the medical records of the patient, to investigate the treatment procedures administered to her, and to inform his client that there may have been some question about the medical care and treatment she received, but that he did not handle medical malpractice. Appellee's contention on this issue is simply that Mr. Runner was not retained under the contract to handle a medical malpractice case, and he therefore had no duties in that regard.

We are not ready to hold that Mr. Runner had absolutely no duties to his client with regard to a medical malpractice action simply because the written contract did not specifically mention a malpractice suit. To do so would require the client, presumably a layman who is unskilled in the law, to recognize for himself all potential legal remedies. An attorney cannot completely disregard matters coming to his attention which should reasonably put him on notice that his client may have legal problems or remedies that are not precisely or totally within the scope of the task being performed by the attorney. *Owen v. Neely*, Ky., 471 S.W.2d 705 (1971).

On the other hand, we certainly cannot say that Mr. Runner was neglectful as a matter of law. There was considerable testimony concerning Runner's negligence, or lack of it. There was expert testimony from two attorneys, one for each side.

Runner's testimony, in summary, was that he was hired to represent the Roaches only for the injuries Mrs. Roach sustained as a result of the automobile collision of February 22nd. He testified that he did not handle medical malpractice claims because he was not competent to do so. He had never processed one. He testified that the fact Mrs. Roach entered the hospital with, according to the hospital admission report, multiple contusions and abrasions, a fractured nose, fractured right shoulder and a compressed fracture of the spine, and that she died in the hospital some thirty (30) days later, did not arouse his suspicion of a medical malpractice claim. He did not review the hospital records until he filed the wrongful death action on behalf of Mrs. Roach in Federal Court in Lexington, Kentucky, on June 9, 1972. Runner's law associate, who actually reviewed the medical records on June 9, 1972, testified the records were incomplete as there was no autopsy report in the medical records on June 9th.

Runner further testified that no one representing the deceased Mrs. Roach ever called to his attention the possibility of a medical malpractice claim until the "second attorney" previously mentioned contacted him some few days before the statute of limitations ran on the medical malpractice claim. Runner's testimony was that he told this other attorney to "go ahead" with the medical malpractice claim.

Appellant offered proof that Runner was contacted by members of Mrs. Roach's family concerning the medical malpractice case long before the statute ran. They were concerned with what Runner was doing about the medical malpractice case. The appellant produced expert testimony from a

local lawyer to the effect that Runner's failure to inquire into the cause of death of Mrs. Roach and his failure to review the medical records was not consistent with good legal practice and, in fact, was a substantial departure therefrom.

The other important testimony was that the Roach family, including Daugherty, a brother of Mrs. Roach, had discussed, among themselves, the medical malpractice case as early as December, 1972. They had in fact contacted two attorneys in Lexington, who declined the case. They were aware of the statute of limitations.

The family then proceeded to northern Kentucky, where on March 15, 1973, they employed the "second attorney" to represent the estate in the medical malpractice case. He filed no complaint. Some time after July 28, 1973, he turned the case over to the appellant's current attorney, who on August 1, 1973, filed a medical malpractice claim in Fayette Circuit Court which was subsequently dismissed as barred by the statute of limitations.

■ Under these circumstances the question of whether Runner had exercised the degree of care and skill expected of a reasonably competent attorney was a question for the jury to decide. This is true especially in light of the fact that there was disputed testimony concerning whether the possibility of a medical malpractice action had been discussed with Runner.

The issue of Runner's negligence was submitted to the jury under the following instructions:

4. It was the duty of the defendant, E. Michael Runner, Attorney at Law, in undertaking the legal representation of the Estate of Lula Daugherty Roach, to exercise that degree of care and skill expected of a reasonably competent lawyer acting in the same or similar circumstances about which you have heard evidence, and this general duty, included the following specific duties:

(A) Not to undertake representation in a legal matter in which he knew or should have known he was not competent without associating with himself a lawyer that was competent to handle it;

(B) Not to undertake representation in a legal matter without preparation adequate in the circumstances.

5. The Jury will answer the following interrogatory:

Do you believe from the evidence that the defendant, E. Michael Runner, failed in one or more of the duties imposed upon him by instruction number 4, and such failure was the substantial factor in the Estate of Lula Daugherty Roach not recovering the award set out in instruction number 3 and incorporated in Verdict A?

Nine of the jurors answered the question in the negative. While we may have found differently had we sat as jurors in this case, we believe there is sufficient evidence to support this jury's verdict, and we therefore will not disturb it. Based upon the conflicting evidence, we fail to see how Runner was negligent as a matter of law.

As authority for his contention that the trial court erred in submitting Runner's negligence to the jury, appellant cites *Christy v. Saliterman*, 288 Minn. 144, 179 N.W.2d 288 (Minn., 1970). The case does not support appellant's position. It was a "suit within a suit" as we have in the instant case. The attorney, Saliterman, was hired for the purpose of instituting a medical malpractice claim. He did not file the claim until the statute of limitations had run, and was sued by Christy for legal malpractice. The questions of medical malpractice and legal malpractice were both submitted to the jury, which found both the doctor and lawyer negligent in their respective duties. In that case, under facts much more indicative that the attorney had been employed to bring a malpractice action, the appellate court was faced *not* with whether a directed verdict should have been granted on the question of employment, but with whether the jury's finding of employment was supported by the evidence. The appellate court found that it was. On appeal, no allegation was made that a directed verdict should have been granted to the plaintiff on the issue of employment.

Appellant further contends that the trial court erred in refusing to give the following tendered instruction:

You are further instructed that it is no defense to the Defendant, E. Michael Runner, Attorney at Law, that the Plaintiff employed, or attempted to employ, an Attorney who might have been able, by taking appropriate action, to avoid the damage to Plaintiff's decedent's estate, but failed to do so.

Plaintiff contends that *Wimsatt v. Haydon Oil Co., supra*, supports this tendered instruction.

In *Wimsatt*, a 5–2 decision, one Carrico was the owner and operator of a motor vehicle involved in an accident on December 13, 1962, in Washington County, Kentucky. His wife, a passenger, died as a result of injuries sustained in the accident. Mr. Carrico was also injured and his car was demolished. The facts of the case as reported do not spell out the employment contract of the attorneys; nevertheless, attorneys Dean and Wathen filed suit on behalf of Carrico on July 20, 1963. The complaint did not include a demand for damages suffered by Mr. Carrico as a result of the personal injuries he sustained.

It was discovered, on a deposition taken of Carrico in February, 1964, that he had sustained personal injuries. He fired Dean and Wathen, and his new attorney filed an amended complaint setting up Carrico's personal injury claim. The trial court dismissed the amended complaint as being barred by the one-year statute of limitations. The suit proceeded on the original complaint, and after recovering on the death and property damage claims, Carrico brought suit against Dean and Wathen for their failure to include a claim for his personal injuries before it became barred by the statute of limitations. The attorneys presented a defense that the trial court had erred in dismissing the personal injury claim and that the dismissal should have been appealed. The trial court, apparently accepting this defense and another, gave judgment for the attorneys on the pleadings. On appeal from this later judgment,

the Court of Appeals decided, by a split decision, that the amended complaint should have related back under CR 15.03 and was therefore dismissed erroneously. The appellate court held, however, that the failure of the second attorney to appeal from the erroneous decision dismissing the personal injury claim did not bar a suit based in negligence against Dean and Wathen.

*Wimsatt, supra*, does not require or suggest that an instruction similar to that tendered by the appellant must be given. It merely held that the failure of a second attorney to pursue the perfect course of legal action which would or may extricate the plaintiff from a bar to his legal claim could not be the basis for a judgment on the pleadings in favor of the first attorney in a negligence suit against him. In other words, the court determined that the alleged negligence of the second attorney was not, as a matter of law, a superseding cause. The appellant's argument, in effect, is that the jury in this case should have been instructed that the possible negligence of the second attorney was not a superseding cause of the plaintiff's damage. The case of *House v. Kellerman*, Ky., 519 S.W.2d 380 (1974), holds to the contrary. *House* set forth a rule of law, then new to Kentucky, that the question of whether an undisputed act was a superseding cause is a legal issue for the court, and is not a fact issue for the jury:

Only when (1) an act which is claimed to have taken place would be a superseding cause as a matter of law, and (2) there is an issue of fact as to whether it happened, should there be an instruction mentioning it . . . ..

If there is no issue as to whether the act or event actually occurred, whether it constituted an independent cause superseding and eliminating the alleged negligence of the defendant as a legal cause should be determined by the court. If it was, the defendant is entitled to a directed verdict. If it was not, or if reasonable minds could differ on the question, the case should be submitted to the jury under the usual instructions,

leaving it to the lawyers to argue in their summations to the jury whether the event in question played such a major role as to exclude the defendant's negligence from being a "substantial factor" in causing the accident.

In short, only when an intervening force would constitute a superseding cause as a matter of law should it be singled out as the subject of an instruction, and then only if it is necessary to determine whether in fact it took place. *House, supra* at 383.

Under the authority of *Wimsatt, supra,* the possible negligence of the second attorney in this case is not, as a matter of law, a superseding cause to the plaintiff's damage. Furthermore, the facts concerning the employment of the second attorney were not in dispute. Hence, the trial court's denial of the defendant's motion for a directed verdict and submission of the question of causation to the jury, without special instructions concerning the second attorney, was entirely proper.

 We note that the trial court's instruction mistakenly required the jury to find that Runner's breach of duty, if any, was "the" substantial factor in the plaintiff's failure to recover. The instruction should have read, "a" substantial factor. *House v. Kellerman, supra; Restatement (Second) of Torts,* § 431 (1965). However, the trial court was not made aware of the error by objection, and it has not been raised on appeal, nor could it be, CR 51(3). For this reason we are not able to review the question. In any event, it does not appear to be so substantial as to have caused the plaintiff any prejudice.

 The appellant next contends that the trial court erred in permitting the expert attorney witness to testify on behalf of appellee because his testimony was based on improper evidence in the form of a hypothetical question.

First we would point out that the expert witness's testimony was lengthy and, in fact, the hypothetical question consumes some four pages of the transcript of evidence. Appellant doesn't specifically state what his objections are to the expert testimony other than to say the trial court's ruling on the admissibility of certain evidence, upon which the hypothetical question was based, was erroneous. However, the admissibility of this evidence was properly ruled on by the trial court, was before the jury, and formed the basis for the expert's opinion. We find no error by the trial court. As the court stated in *Christy v. Saliterman, supra* :

> An appellate court will not interfere with the exercise of the trial court's discretion with reference to the form and content of such a question unless such discretion has been abused or wrongfully exercised . . . *Id.* 179 N.W.2d at 303–04.

See also 31 Am.Jur.2d 54 to 57 for a discussion on this subject.

After reading the transcript of the testimony of attorney Ballentine, we cannot find any abuse of discretion by the trial court.

In conclusion, we would add that we do agree somewhat with a statement appellant makes in his well-written brief. Appellant states thusly:

> Perhaps the issue that is involved in this case is far beyond the instant action, and must be laid at the doors of the Bar as a whole and more specifically, appellee. Maybe we, as a profession, have not discharged our responsibility to inform the public as a whole, and more specifically, Mr. Roach, that we specialize and limit our practice. However, in the end result, the effect on the client is the same; the public expects, and has the right to demand, that their legal affairs will be approached with expertise and initiative and anything short of that is a violation of the trust and confidence reposed in a member of our profession.

To that, we would simply repeat that all the evidence in this case was submitted to a jury of twelve citizens of this community, nine of whom found for the attorney. Even though we may have found differently had we sat as jurors in this case, we cannot disturb their verdict, as it was sufficiently supported by the evidence.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.