35 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bill E. McKAY, Plaintiff-Appellant,
v.
George E. DUDLEY; et al., Defendants-Appellees.
 No. 92-6299.
 United States Court of Appeals, Sixth Circuit.
 Sept. 2, 1994.
 
 Before: NELSON and NORRIS, Circuit Judges; ENGEL, Senior Circuit Judge.
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Plaintiff, Bill E. McKay, Jr., appeals from an order of the district court granting summary judgment to defendants, members of the law firm of Brown, Todd & Heyburn ("BTH"). The order rested on the basis that plaintiff's proof of causation of damages from his legal malpractice claim was insufficient. We reverse.
 
 I.
 
 2
 In August 1989, plaintiff entered into a settlement agreement with Harold Sergent resolving a dispute regarding real estate development. The agreement required Sergent to pay plaintiff $735,000. Sergent was a sales agent for an entity controlled by Addington Resources, Inc., and was entitled to collect, through his corporation, Sergent Energy,[1] a $10,000 per month retainer, and commissions for coal he sold for Addington. The settlement agreement required Sergent to assign to plaintiff his right, granted by a royalty agreement, to commissions from the sale of coal extracted from property Addington had acquired through Sergent's negotiations. Sergent also assigned to plaintiff his rights in an escrow agreement and agreed to sell certain stocks and horses and to pay the proceeds to plaintiff. Sergent was to pay the balance of the debt in monthly $15,000 installments. To secure the debt, Sergent agreed to grant mortgages on certain real estate. He also granted plaintiff a security interest in ten horses he owned and in "[a]ll existing and future 'Accounts,' 'Accounts Receivable' and 'Contract Rights' of the DEBTOR ... and ... without limitation, all money due or to become due to DEBTOR under or pursuant to" the royalty agreement and the escrow agreement. In fact, though, Sergent never paid plaintiff anything.
 
 
 3
 Plaintiff notified Addington of the assignment of the royalty agreement, and requested that the commissions be paid directly to him. Addington referred the notice to its counsel, BTH. BTH had represented Sergent in the past and had represented plaintiff on many occasions.
 
 
 4
 When Sergent's intent to default on his obligation became apparent, plaintiff retained BTH to collect the debt. Aware of BTH's past representation of Sergent and Addington, plaintiff asked BTH to determine whether its representation of him in this matter posed any conflict of interest. BTH assured him that no conflict would arise, apparently because it no longer considered Sergent a client. On September 21, 1989, BTH filed a complaint in state court on plaintiff's behalf against Sergent.
 
 
 5
 On September 29, 1989, BTH helped plaintiff take possession of some of the horses mentioned in the settlement agreement. Sergent's wife, however, claimed that she owned the horses, and, after threatening to sue plaintiff, regained possession of them October 2. Thereafter, neither plaintiff nor BTH interfered with her possession.
 
 
 6
 About this time, BTH recalled that it had formerly represented Sergent in a transaction in which he had pledged the horses to a bank. Addington suggested that, due to Addington's relationship with Sergent, BTH's representation of both Addington and plaintiff created a conflict. On October 4, BTH withdrew from its representation of plaintiff in the collection matter against Sergent, stating that it possessed information from Sergent concerning the ownership of the horses. BTH, in its letter of withdrawal, made clear that it would continue to represent plaintiff in other matters.[2]
 
 
 7
 That same day, the Sergents, through other counsel, transferred all of the assets owned by Sergent and Sergent Energy to a newly incorporated entity, HLNS. Sergent's wife was the sole director and owner of HLNS. HLNS then employed Sergent, anticipating that the monthly retainer and commissions Addington owed Sergent would be paid to HLNS rather than to Sergent Energy.
 
 
 8
 Plaintiff retained new counsel for the collection matter. BTH helped the new attorney become familiar with the case,[3] and assured plaintiff that it would do nothing adverse to his interests in its representation of Addington.
 
 
 9
 BTH, however, on October 16, drafted an agreement between Sergent Energy, the Sergents, HLNS, and Addington. The October 16 agreement purported to settle a dispute over compensation owed to Sergent under all the prior agreements between the parties, with the exception of compensation owed under the royalty agreement. It cancelled all prior agreements authorizing Sergent to act as Addington's agent in the sale of coal, and required Addington to pay Sergent Energy, as compensation due on those cancelled contracts, $175,000 immediately, and $150,000 three months later.[4] A companion agreement, also drafted by BTH, appointed HLNS, in Sergent Energy's stead, to sell coal for Addington. Neither of the October 16 documents affected the royalty agreement.
 
 
 10
 On October 25, Sergent's wife sued plaintiff in state court, alleging that he had wrongfully taken possession of her horses. That case is still pending. On November 2, the Sergents filed a petition for personal bankruptcy.[5] On December 29, plaintiff filed a second civil action in state court against the Sergents, Sergent Energy, HLNS, and Addington and its related entities. Finally, on October 15, 1990, plaintiff filed this action against BTH, alleging it committed malpractice when it acted adversely to his interests and breached its fiduciary duty to him.
 
 II.
 
 11
 Plaintiff appeals the district court's grant of BTH's motion for summary judgment. We review a district court's grant of summary judgment de novo. Jones v. Tennessee Valley Auth., 948 F.2d 258, 261 (6th Cir.1991). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the district court that there is an absence of a genuine dispute over any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden may be satisfied either by producing evidence showing the absence of a genuine issue of material fact or by showing that there is an absence of evidence to support the non-movant's case. Id. at 325. Once the movant has made and supported its motion for summary judgment, the adverse party must, by affidavits or otherwise, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When, looking at the record as a whole, a reasonable mind could come to but one conclusion, there is no genuine issue of material fact and summary judgment is appropriate. Id. at 250-51.
 
 III.
 
 12
 Under Kentucky law, the plaintiff in a legal malpractice action must show (1) the existence of a duty of care arising out of a lawyer-client relationship; (2) that the lawyer "neglected his duty to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances"; and (3) that the lawyer's negligence resulted in, and substantially contributed to, the plaintiff's injuries. Daugherty v. Runner, 581 S.W.2d 12, 16 (Ky.Ct.App.1978). To meet the third requirement, the plaintiff need not show that the lawyer's negligence was the sole factor contributing to his injury; he need only show that it was a contributing factor. Id. at 20. The district court concluded that summary judgment was in order because plaintiff could not meet the third requirement.
 
 
 13
 Plaintiff's brief does not specify the portions of the district court's order with which he takes issue, as required by Federal Rule of Appellate Procedure 28(a)(2). However, he appears to focus on the court's disposition of Count Two of his second amended complaint.
 
 
 14
 In Count Two, plaintiff alleged that BTH breached its fiduciary duty by preparing the settlement agreement between the Addington and Sergent entities, by failing to disclose the agreement's existence,[6] and by helping those entities remove assets from his reach, in order to frustrate his claims against Sergent. The district court rejected plaintiff's contention that BTH breached any fiduciary duty it owed to plaintiff. The court's decision was at least partially based upon its conclusion that the settlement agreement documents drafted by BTH on October 16 had no adverse impact on plaintiff because the royalty agreement had been specifically excluded. The court's decision also rested upon the conclusion that BTH, by merely drafting the documents comprising the agreement, made no substantive contribution to the agreement between the Addington and Sergent entities. The court was apparently persuaded by BTH's argument that the parties' agreement, not BTH's drafting services, harmed plaintiff.
 
 IV.
 
 15
 The parties' arguments on appeal focus on the third prong of the Kentucky test for legal malpractice--causation and damages--as it applies to Count Two of plaintiff's complaint. In fact, BTH concedes that plaintiff has satisfied the first two prongs. Therefore, we assume that BTH created a conflict of interest by drafting the settlement agreement between the Addington and Sergent entities. We further assume that a reasonably competent attorney would have declined to represent Addington in this matter, because undertaking such representation would impair the interests of plaintiff, a current client. The record makes it clear to us that plaintiff made a sufficient evidentiary showing on the third prong to defeat BTH's motion for summary judgment.
 
 
 16
 When Sergent defaulted on his promise to pay plaintiff under their August 1989 settlement agreement, BTH undertook to assist plaintiff in seeking a money judgment against Sergent. Any reasonably competent attorney would understand that, from that point forward, plaintiff had an interest in pursuing all of Sergent's assets to satisfy the claim. In addition, by undertaking the representation and thereby becoming plaintiff's fiduciary, BTH obligated itself to refrain from taking actions adverse to his interest, and to disclose any transaction that might compromise his interests. Stewart v. Kentucky Paving Co., Inc., 557 S.W.2d 435, 437-48 (Ky.Ct.App.1977); see also Aero Drapery of Kentucky, Inc. v. Engdahl, 507 S.W.2d 166, 169 (Ky.1974). BTH's withdrawal from representation in the collection matter did not extinguish its duty to not harm plaintiff's interests, since BTH continued its attorney-client relationship with him for at least several more months. Furthermore, BTH explicitly assured plaintiff and his new counsel that it would do nothing in its representation of Addington that would impair plaintiff's interests. Yet, despite its duty and promise, BTH, by drafting the Addington/Sergent agreement, facilitated the secreting of the very assets in which plaintiff had an interest.
 
 
 17
 The agreement between the Addington and Sergent entities prematurely terminated Sergent's agency contract with Addington. It was important to plaintiff that Addington continue to pay Sergent for the sale of its coal. And, he had a vital interest in seeing that any money due Sergent under the agency agreement not be placed beyond his reach as a creditor of Sergent. BTH's facilitation of the agreement, which removed money due under the agency contract from plaintiff's reach, harmed his interests and contributed to his injury in at least two ways.
 
 
 18
 First, plaintiff may have lost the opportunity to satisfy his claim with funds due under the agency contract. Second, whether or not plaintiff is ultimately successful in satisfying the judgment that resulted from his claim against Sergent,[7] the difficulty and expense of satisfying the judgment with those funds has been increased. Under Kentucky law, these increased litigation expenses may be recovered in a malpractice action. See Nilson-Newey & Co. v. Ballou, 839 F.2d 1171, 1177 (6th Cir.1988) (citing Indiana Nat'l Life Ins. Co. v. Butler, 215 S.W. 949, 950 (Ky.1919)) ("The prevailing rule seems to be that the reasonable expenses of prior litigation caused by the wrongful act of another, including compensation for attorney's fees, may be recovered where the party incurring them acted in good faith in bringing his action or making defense.").
 
 
 19
 While the amount of plaintiff's damages may be uncertain due to pending underlying litigation, "it has long been recognized that once the fact of damage has been properly shown, 'uncertainty as to their amount will not foreclose recovery.' " Riverside Coal Co., Inc. v. UMWA, 410 F.2d 267, 274 (6th Cir.) (quoting Flame Coal Co. v. UMWA, 303 F.2d 39, 44 (6th Cir.), cert. denied, 371 U.S. 891 (1962)), cert. denied, 396 U.S. 846 (1969).
 
 
 20
 Implicit in the district court's reasoning is the thought that plaintiff could not prove proximate causation because, had BTH not drafted the settlement agreement, another attorney would have and plaintiff's injury would be no different. BTH argues that this means that plaintiff cannot prove causation in fact. Such a contention misses the mark, however, because only BTH owed plaintiff a duty to not injure him. That another attorney could also injure plaintiff is irrelevant because that other attorney would not thereby breach a duty owing to him. Our inquiry is limited to whether BTH's breach of its duty contributed to plaintiff's damages. If plaintiff's injuries would have been the same absent BTH's conduct, then, of course, plaintiff cannot prove causation in fact. But, the fact that another attorney could have drafted the agreement is irrelevant to the causation issue.
 
 
 21
 BTH's most coherent causation argument is that its drafting of the agreement is not a "but for" cause of plaintiff's injuries because the oral agreement between the Sergent and Addington entities existed prior to BTH's drafting and would have alone produced the injury about which plaintiff complains. However, plaintiff has produced evidence suggesting that substantive changes to the original oral agreement were made during the drafting of the agreement documents. That evidence is sufficient to defeat BTH's cause-in-fact argument at this stage of the proceeding.
 
 
 22
 The district court erred by accepting BTH's arguments concerning causation and damages. "[I]f the concept of legal malpractice ... is to be more than a mirage, plaintiffs who can produce evidence of negligence or breach of fiduciary responsibility by their attorneys must be given the opportunity to show that they have been damaged." Woodruff v. Tomlin, 616 F.2d 924, 937 (6th Cir.) (en banc), cert. denied, 449 U.S. 888 (1980).
 
 V.
 
 23
 The order granting summary judgment is reversed, and this cause is remanded to the district court for further proceedings according to law and consistent with this opinion.
 
 
 
 [1]
 Sergent Energy was also a party to the settlement agreement
 
 
 [2]
 Two months later, in December 1989, BTH withdrew completely from any representation of plaintiff
 
 
 [3]
 On October 18, 1989, plaintiff's new counsel filed an amended complaint against Sergent
 
 
 [4]
 Plaintiff claimed that the money was actually paid to Mrs. Sergent's creditors and otherwise placed beyond his reach
 
 
 [5]
 Plaintiff contested the petition, and the bankruptcy judge found that it had not been filed in good faith. The court therefore converted the petition to a Chapter 7 bankruptcy. In so doing, the court found that certain pre-petition transfers by Sergent, including the October 16 agreement drafted by BTH, "were for the purpose of removing from his estate assets that could be levied upon by [plaintiff]."
 
 
 [6]
 BTH argues that it could not have disclosed to plaintiff the existence of the documents because it had a duty to Addington to keep the information confidential. Of course, this is precisely plaintiff's point
 
 
 [7]
 In January 1992, plaintiff obtained a money judgment against Sergent and his entities. Plaintiff is currently attempting to satisfy this judgment in two separate actions in state court