38 Mass. App. Ct. 513                                    513

Castillo v. Massachusetts General Hospital Chelsea Memorial Health Care Center.

FRANKLIN CASTILLO & another[1] vs. MASSACHUSETTS
GENERAL HOSPITAL CHELSEA MEMORIAL HEALTH CARE
CENTER & another.[2]

No. 93-P-1485.

Suffolk. November 21, 1994. - May 11, 1995.

Present: WARNER, C.J., JACOBS, & IRELAND, JJ.

*Medical Malpractice*, Statute of limitations. *Limitations, Statute of.
Practice, Civil*, Summary judgment.

In a medical malpractice action, a genuine issue of material fact existed as
to when the plaintiff should have discovered that he had been harmed
by his physician's failure to inform him of possible lead poisoning and
of the need for follow-up testing and medical attention, and the order
granting summary judgment for the defendants was reversed. [515-
518]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 12, 1990.

The case was heard by *Elizabeth B. Donovan*, J., on a mo-
tion for summary judgment.

*Floyd H. Anderson* (*Mark D. Stern* with him) for the
plaintiffs.

*Mary T. Gibbons* (*Robert G. Eaton with her*) for M.
Sheila Desmond & another.

JACOBS, J. The issue, framed in the context of the allow-
ance of the defendants' motion for summary judgment, is
whether the plaintiffs' medical malpractice complaint is

---

[1] Yolanda Castillo, for themselves and their son, Doy Castillo.
[2] M. Sheila Desmond.

barred by the statute of limitations as matter of law.[3] Upon review of the Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), submissions in the record, we determine that a genuine issue of fact exists as to when the plaintiffs' cause of action accrued and, therefore, reverse the Superior Court judgment dismissing the complaint.[4]

The plaintiff Doy Castillo, whose date of birth is November 23, 1978, was examined by the defendant Dr. Desmond at the defendant health center on September 15, 1981. It is undisputed that the result of a blood test taken at that time, which might have been interpreted as indicating the possibility of lead poisoning, was not then made known to his parents, and that no follow-up blood test was conducted until another physician ordered a repeat test at the health center on June 25, 1982. On the basis of that later test, personnel at the health center determined that Doy had an elevated level of lead in his blood and informed his mother that the result indicated lead poisoning. This led to discovery by the plaintiffs of lead in their apartment, and their engagement of an attorney in 1982. The attorney brought suit against their landlord in 1984.

In preparation for trial against the landlord, the plaintiffs' attorney, on January 30, 1986, obtained some of Doy's medical records from the health center and later submitted them to a medical expert for review. The expert advised him on January 16, 1987, that the records revealed indicia of Doy's lead poisoning as early as September, 1981. On January 12, 1990, the plaintiffs filed the medical malpractice complaint now before us, essentially claiming injury as a result of the defendants' failure to advise them, in September of 1981,

---

[3]The complaint contains: (1) a count averring negligent treatment of Doy against the health center and its agents, and (2) a count for grave mental distress thereby caused to his parents; (3) a count of negligent treatment by M. Sheila Desmond, and (4) a count for grave mental distress thereby caused to Doy's parents.

[4]The plaintiffs' notice of appeal states that the appeal also is from certain orders relating to discovery and reconsideration of a medical malpractice tribunal's finding. These matters have not been argued to us and we, therefore, deem them waived.

that Doy might then have been lead poisoned or that he needed immediate follow-up testing and medical attention. They allege that without such follow-up, Doy's lead poisoning injuries were aggravated during the nine months between September of 1981 and June of 1982.

The plaintiffs maintain that while their complaint was not filed until approximately nine years after the alleged malpractice, it was nevertheless timely because their cause of action did not accrue until January 16, 1987, when they acquired actual notice of the September, 1981, blood test.[5] They argue that it is error to conclude, as did the judge, that the rule 56 submissions establish, as matter of law, that knowledge of the 1981 blood test was attributable to them no later than (1) when the results of the 1982 blood test were made known to them or (2) when in 1986, in the course of their suit against their landlord, their lawyer acquired Doy's medical records from the health center. It is undisputed that such knowledge, if properly imputed to the plaintiffs, would bar their action.[6]

A cause of action for medical malpractice will "accrue when the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct." *Franklin* v. *Albert*, 381 Mass. 611, 619 (1980). Accordingly,

---

[5]In response to the motion for summary judgment, the plaintiffs and their attorney rely on affidavits asserting ignorance of the contents and significance of the 1981 record until January 16, 1987. In those affidavits the plaintiffs also state that they were not aware before that date that the defendants had reason to believe that Doy had been lead poisoned prior to June, 1982. An affidavit of an expert supplied evidence of harm to Doy during the period between September 15, 1981, and June 25, 1982. These affidavits suffice to meet the plaintiffs' burden, in the face of a motion for summary judgment based on the statute of limitations, of "alleging facts which would take [their] claim outside the statute." *McGuinness* v. *Cotter*, 412 Mass. 617, 620 (1992).

[6]The parents' action is governed by G. L. c. 260, § 4, which imposes a three-year limitation. Doy's action is controlled by G. L. c. 231, § 60D, as it appeared prior to its amendment in 1986. See St. 1986, c. 351, § 23. In that form, it also required that a medical malpractice action brought by a minor be commenced within three years from the date the action accrued. The exception then in force extending the permissible suit commencement date until a minor's ninth birthday is here inapplicable since this action was commenced when Doy was eleven years old.

a "limitations period commences to run when a reasonably prudent person (in the tort claimant's position), reacting to any suspicious circumstances of which he might have been aware . . . , should have discovered that he had been harmed by his physician's treatment. On an appropriate record, summary judgment may be granted on the question whether a particular statute of limitations has run." *Malapanis* v. *Shirazi*, 21 Mass. App. Ct. 378, 383 (1986). "We do not require that a plaintiff have notice of a breach of a duty before a cause of action may accrue, but we do require that a plaintiff have (1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was." *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 208 (1990). While summary judgment appropriately may be granted in a medical malpractice case on the basis of the running of a statute of limitations, see *McGuinness* v. *Cotter*, 412 Mass. 617, 620 (1992); *Malapanis* v. *Shirazi*, *supra* at 383, "the question when a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact." *Riley* v. *Presnell*, 409 Mass. 239, 240 (1991).

Considering the rule 56 materials with appropriate indulgence in the plaintiffs' favor, see *McGuinness* v. *Cotter*, *supra* at 620, we discern no basis for concluding, as matter of law, that a reasonably prudent person in the position of any of the plaintiffs should have discovered, prior to January 16, 1987, that he had been harmed by not having been informed of the 1981 test results. A determination that receipt of the 1982 blood test results would have aroused the suspicions of that reasonable person sufficiently to spur investigation of the results and implications of the September, 1981, test and would have led to the discovery that he had been harmed by the failure to inform him of those results, involves a decisional process fraught with resolution of factual issues and, is, therefore, peculiarly within the province of the trier of fact.

The defendants argue that when the plaintiffs' attorney in the suit against their landlord received Doy's medical records

on January 30, 1986, they were then chargeable with "all of the facts giving rise to their causes of action against the defendants" because the attorney's knowledge should be imputed to the client, thereby causing the statute of limitations to start running on that date. The record of the 1981 test consists of a document which in relevant part contains the words "CHILDHOOD LEAD POISONING PREVENTION PROGRAM" and the numbers "233" within a box over which appears the designation "EP Result." Another box over which the designation "Pb Result" appears is blank. "EP" is an abbreviation for erythrocyte protoporphyrin. Not indicated in the report is any explanation that the EP number reflects "[a] screening test to detect lead poisoning," 2 Schmidt, Attorneys' Dictionary of Medicine at E-162 (1994), or that "Pb" is an abbreviation for lead. There is also no explanation in the report of the significance of the number 233. The rule 56 submissions indicate that it represents a high level of a blood "marker." The defendant Desmond testified in a deposition in this case that it is "a general marker, general test . . . . It could mean a number of other problems may exist that cause [the EP level] to be elevated . . . ," and that lead poisoning could be one of those problems.

We cannot say, as matter of law, that such technical information, acquired as it was in the course of preparation for trial against the landlord, should have alerted the attorney to the existence of a cause of action against the defendants. To the contrary, we believe there is clearly a question of material fact whether the attorney knew or should have known from that uninterpreted and unexplained 1981 test result, even in combination with other test results in the health center record showing different EP levels and also reporting Pb results at a later time, that his clients had been harmed by the defendants' failure to communicate to them the

results and implications of the 1981 test.[7]

*Judgment reversed.*

---

[7]In the circumstances, we do not address issues which may arise on full development of the factual background of the case and relating to the extent to which the client is bound by the knowledge of his attorney. See *Vietor* v. *Spalding*, 199 Mass. 52, 54 (1908); Restatement (Second) of Agency § 272 (1958)("the liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information"). See also *Owens* v. *Lac D'Amiante du Quebec, Ltee.*, 656 F. Supp. 981, 983 (E.D. Pa. 1987); *Daugherty* v. *Runner*, 581 S.W.2d 12, 17 (Ky. Ct. App. 1978) ("[a]n attorney cannot completely disregard matters coming to his attention which should reasonably put him on notice that his client may have legal problems or remedies that are not precisely or totally within the scope of the task being performed"). We also leave to the trial court any questions relating to the extent and clarity of the 1981 test result information supplied to the plaintiffs' attorney in January, 1986.